GEORGE S. VIRDEN ET AL *v.* BRADFORD MURPHY.

1. GAMBLING. *Money to be used in. Promissory note. Illegal consideration. Code 1892, § 2114.*

   One who advances money to another to be used in a gambling business, and who is to be repaid only from the proceeds of the business, cannot enforce payment, and a note given after the close of the business for money so advanced is without valid consideration. Code 1892, § 2114.

2. NOVATION.

   A claim against partners is not novated by the creditor's acceptance of the promissory note of one of them, the understanding being that the other is not to be released.

3. FRAUDULENT CONVEYANCES.

   A conveyance will not be vacated as fraudulent at the instance of a complainant whose debt is invalid.

FROM the chancery court, first district, of Hinds county.
HON. HENRY C. CONN, Chancellor.

Murphy, the appellee, was complainant and Virden and wife, appellants, were defendants in the court below.

The object of the suit was to vacate as fraudulent a conveyance of property, real and personal, executed by appellant,

George S. Virden, to his wife, Ellen. The appellee, Murphy, claimed that he was a creditor of the grantor in the deed at its date, and he based his suit upon the individual promissory note of said grantor, George S. Virden. It appeared that the debt for which the note in suit was given was originally evidenced by a written receipt or contract, in these words: "Philadelphia, June 8, 1896.—Received of Bradford Murphy $600, in consideration of which amount we agree to pay to him one-third net profits until his profits amount to $600, and from then on one-fourth of the net profits and $5 per week. Virden & Company."

The defense made to the debt was that George S. Virden and his wife, the husband managing, were, at the date of the receipt, engaged in a "bucket shop," or gambling in futures, business at Philadelphia, and constituted the firm of Virden & Co.; that the money for which the receipt was given was borrowed, as Murphy well knew, to be used in said business. The controverted questions in the case were as to the character of the business of Virden & Co. and Murphy's knowledge thereof. It appeared that after the business had been abandoned, George S. Virden gave his individual note to Murphy for said borrowed money, Murphy accepting the same without releasing Mrs. Virden from liability. The court below resolved the controverted facts in favor of complainant, held his debt valid, and decreed the conveyance from Virden and his wife to have been fraudulent. Virden and wife appealed to the supreme court.

*Harper & Potter*, for appellants.

Murphy admits that the note of George S. Virden had no new consideration, but was founded upon the old obligation of Virden & Company, as disclosed by the receipt. It is clear that by the terms of the agreement, as evidenced by the accepted receipt, the six hundred dollars ($600) was only to be returned, if at all, out of the net profits, and there is nowhere

any allegation in the pleading that there were any profits at all, nor does the proof show that there were ever any profits. On the contrary, the evidence is that there were no profits. Again, this agreement on its face constitutes a partnership, and made Bradford Murphy a partner in a hazardous enterprise, and not a mere lender of money or an extortionate usurer. This identical question has been settled in this state in the case of *Duval* v. *Neal*, 70 Miss., 288-290.

It is universally held that when advances are to be repaid only out of the net receipts, and not in any event, the agreement constitutes a partnership in a hazardous venture, and is not a loan.

The court below held that while no recovery can be had on the original obligation of Virden & Company, since it constitutes a partnership and Murphy was only to be paid out of the net profits, of which there was none, that he was still entitled to recover against George S. Virden on the new obligation as evidenced by the promissory note annexed to the original bill.

It will be observed that complainant in his amended bill places himself squarely upon the original obligation of Virden & Company, as shown by the receipt, and denies specifically that such obligation was ever released or extinguished by the new obligation of George S. Virden, and seeks to hold Mrs. Virden on the old obligation. Now, the note given by George S. Virden had and could have had no other consideration than the old obligation of Virden & Company. For the old, to constitute a good and valid consideration for the new obligation, there must have been a legal novation and substitution, since the parties and the terms both were changed. But it is learning of the most elementary character that in order that such novation and substitution may be valid and binding, all the parties to it must expressly consent thereto, and the old obligation must be extinguished and abrogated before the new can be effective. Or, in the language of the books, "In every novation there are four essential requisites; first, a previous valid obligation; sec-

ond, the agreement of all the parties to the new contract; third, the extinguishment of the old contract; and, fourth, the validity of the new one." *Clark* v. *Billings*, 59 Indiana, 508.

Our own supreme court lays down the very elementary principles applicable to this case so fully and so plainly that it seems superfluous to look further for authority. *Adams* v. *Power*, 48 Miss., 450.

The court below has grievously erred in its conclusions of fact from the evidence offered by complainant himself. Certainly Virden & Company were engaged in keeping a "bucket shop," or a place where dealings in futures and options were carried on, and Virden & Company did deal in futures. Indeed, there is no serious denial of this fact in the several depositions, the contention being that such transactions did 'not constitute their entire business; which contention, in the legal aspect of this case, does not in the least change or alter the results herein, since the entire business, as actually done by Virden & Company, was confessedly of an illegal character, because the evidence shows that no deliveries were ever made of any commodity sold or bought by or through Virden & Company. The entire business was the sale of commodities for future delivery upon margins, in none of which was delivery actually made. So there is no occasion for a separation of the legal from the illegal parts.

Murphy had knowledge of the nature or character of the business as carried on by Virden & Company. Upon this we invite the most careful attention of this court, for, if the conclusions of the court below, from the evidence of Murphy himself, be correct, then the statutory provisions against dealing in futures are practically and effectively wiped out.

*Brame & Brame*, for appellee.

When Virden was in need of money and found that his old friend and former companion, Murphy, was in the city of Philadelphia, though that friend was paralyzed and receiving

medical treatment and scarcely capable of attending to any matter of business, he applied for assistance and received it, his friend even pledging a life insurance policy to borrow money to be used in Virden's business. Virden having used this money to carry on the business and support his family, part of the time at an expensive watering place, where he paid $50 a week, now turns upon his friend and benefactor, and, unblushingly admitting his own turpitude, states that he was carrying on a " bucket shop business," a " mere gambling device," and this, too, when by a favorable turn of fortune's wheel he had come into the possession of a large sum of money, between seven and ten thousand dollars. This man Virden, so facile with tongue and pen, who is now lustily swearing that he was engaged in an illegitimate gambling business, practically admits that he deceived and misled his unfortunate friend, and in order to protect himself and cover up the money, shows the basest ingratitude. He asks a court of justice to disbelieve all the other witnesses and to sustain him in his designs to defeat this effort of a deluded creditor to get his money back. When he had been so fortunate as to receive this large sum of money on the death of his relative, if he had been capable of a single generous impulse, if there had been in his heart one particle of gratitude, he would have seen that Murphy had his money to the last farthing, even if he had been indebted to his wife, as he now claims.

We submit to the court that one who is so unblushing in admitting his own turpitude, and who is so utterly destitute of gratitude, is not entitled to have his word taken as against the testimony of all the other witnesses in the case, and especially so when he is contradicted by his own statements and by the contents of his own letters, which he wrote during the occurrence of the events in question, and by all the circumstances in the case.

It is absurd to suppose that Murphy was ever a member of the firm. It is to be borne in mind that the rights of no third

person are involved. There is no question as to the rights of creditors, but the sole inquiry is, as between the parties themselves, was Murphy a partner? In such cases the question whether one becomes a partner is always a matter of intention. 17 Enc. L. (1st ed.), 832 and notes. The old idea that sharing in the profits necessarily makes one a partner is exploded; as between the parties themselves, the intention will control. *Ib.*, 835, 836.

If there was a partnership, Virden and his wife took and appropriated all the assets and made no division with Murphy, and if at that time he was interested in the firm, he was certainly entitled to his share of the assets, and this would constitute a consideration for the execution of the note. Murphy testified that Virden told him that the concern made money, and this is not disputed or contradicted anywhere.

Where there is a loan of money made, to be used in gambling, mere knowledge of the lender of the proposed use of the money will not defeat a recovery. 14 Am. & Eng. Enc. L. (2d ed.), 64 and notes; *Waugh* v. *Peck*, 114 Pa., 422, s. c. 60 Am. Rep., 354.

Where a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former must be adopted. Wharton on Evidence, sec. 1250; Best on Evidence, 346, 347; 86 N. Y., 384, s. c. 117 U. S., 576.

In this case it is perfectly manifest that Murphy had no participation in and no knowledge of any unlawful transactions, if there were such.

The deed was fraudulent in fact, and therefore void. After a full hearing, and a most careful consideration, the learned chancellor so decided, and we submit that his decree is amply sustained by the evidence. This decree being bassed on controverted facts, is analagous to the verdict of a jury. *Davis* v. *Richardson*, 45 Miss., 499; *Apple* v. *Ganon*, 47 Miss., 189; *Harrington* v. *Allen*, 48 Miss., 492; *Wilson* v. *Beauchamp*, 50 Miss., 24.

Argued orally by *W. H. Potter*, for appellants, and *L. Brame*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

We cannot concur in the result reached by the learned chancellor in this case. We are satisfied, after careful consideration of the record, that the business of Virden & Company was what is well known as a "bucket-shop" business, a gambling business, pure and simple, and that appellee knew the nature of the business. We deduce this conclusion from his own testimony taken as a whole. He was to be paid, not at all events, but out of the net profits of the business. It is clear that the notes were without consideration; there was no legal novation, or no new or different consideration passed, and Mrs. Ellen Virden was not released. On the contrary, the amended bill clearly puts appellee's claim on the receipt of June 8, 1896, as its basis, and expressly declares that when the notes were executed Mrs. Virden was not released she being a partner in the firm. Whatever moral consideration George S. Virden may have been under to repay this money, we can find no legal consideration for the notes, and on the receipt of June 8, 1896, and the facts connected with it, the appellee must fail.

We regret our inability under the law to hold appellant for this money, but we sit to administer the law as written, unswayed by sympathy. Hard cases make bad precedents. See *Duval* v. *Neal*, 70 Miss., 288; *Adams* v. *Power*, 48 Miss., 450; Code of 1892, §§ 1120, 1121, 2114; *Lemonius* v. *Mayer*, 71 Miss., 523; *White* v. *Eason*, 15 So. Rep., 66; *Atwood* v. *Mangold*, recently decided. In this view it is immaterial whether the deed from husband to wife was valid or not.

*The decree is reversed and bill dismissed.*