## J. & S. Goodman *v.* Swett.

[66 South. 535.]

Intoxicating Liquors. *Sale on credit. Collection. Statutory provisions.*

Chapter 115, Laws 1908, providing "if any person shall trust, or give credit for intoxicating liquors sold, he shall lose the debt, and be forever disabled from recovering the same or any part thereof, and all notes or securities given therefor, under whatever pretense, shall be void; is not limited in application to debts due for intoxicating liquors sold in the state of Mississippi. It bars all persons from collecting in the courts of this state any debt so contracted.

Appeal from the chancery court of Sunflower county. Hon. E. N. Thomas, Chancellor.

Suit by J. & S. Goodman against J. A. Swett, administrator, for collection of a claim against the intestate for

intoxicating liquors sold and delivered to him. From a decree for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Frank E. Everett,* for appellant.

The sole question presented in this appeal is whether or not section 1743 or the last paragraph of section 1 of chapter 115, Laws of Mississippi, 1908, will bar a recovery in the state of Mississippi for intoxicating liquors sold in the state of Missouri, the sale of Intoxicants being prohibited in Mississippi and allowed in the state of Missouri. Said section being as follows: "If any person shall trust or give credit to another for intoxicating liquors sold, he shall lose the debt, and be forever disabled from recovering the same or any part thereof, and all notes or securities given therefor, under whatever pretense, shall be void."

It will be borne in mind that the liquors in this case were ordered by orders mailed to the shippers in St. Louis, there accepted, filed and delivered to the carrier. Delivery to the carrier for shipment, in the usual course of trade, is *prima facie,* delivery to the consignee. 66 Miss. page 510.

There is, perhaps, no general principle of law better established than that the validity of a contract is to be decided by the law of the place where the contract is made. See *Smith* v. *Godfrey,* 61, Am. Dec., 618, and numerous authorities there cited, both of America and England.

In the case at bar, the pleadings and the agreed statement of facts show that the sale was completed in Missouri. Nowhere in the pleadings or the agreed statement of facts is there even a hint or suspicion that the appellants or either of them knew for what purpose the liquor was ordered by Swett.

In the 17 Am. & Eng. Ency. of law (2d Ed.), page 312, we find the rule stated thus: "Although there are a

108 Miss.15

few decisions which maintain a contrary doctrine, the decided weight of authority is to the effect that mere knowledge by the vendor of intoxicating liquors lawfully sold in one state, that the vendee intends to use it in violation of the laws of another state, will not defeat an action brought by the vendor in such other state against the vendee for the purchase price. If, however, the vendor in any way, no matter how slight, aids the vendee in his unlawful design to violate the laws of the other state, such participation will prevent the vendor from maintaining an action to recover the purchase price. The court agreed on the invalidity of a sale when the contract contemplates a design on the part of the purchaser to resell contrary to the laws of the other state, and requires an act on the part of the seller in furtherance of the scheme. According to the weight of authority, however, to render the sale void and defeat a recovery for the price, it is necessary that there be some participation or interest of the seller in the act itself.''

In the 9th Cyc. at pages 571-2, and 3, we find the rule thusly stated: ''In the United States, while some courts have followed the English rule, most of the courts have taken a different view and have held that the (572) mere knowledge of the seller of goods, that the buyer intends an illegal use of them is no defense to an action for the price.'' Citing cases from practically every state where the question has been presented.

In this connection, I call the court's attention to the case of *Walker* v. *Jefferies et al.,* 45 Miss. 160. In that case there was a suit on a note and the defense was that the note was given for an unlawful purpose, the money advanced on it was to be used for an unlawful purpose and therefore uncollectible. The court held that while the lender of the money knew it was to be used for the purpose of equiping a military company unlawfully or for an unlawful purpose, yet the contract did not so stipulate and the borrowers were left to their own dis-

cretion as to how they would use the money; they could use it lawfully or unlawfully, and were, therefore, liable for its repayment.

Other states, however, have passed upon statutes similar to the one above quoted, and have dealt with cases similar to, but closer on the facts presented, than the case at bar. To some of them, I will refer briefly. In the case of *Bowling Liquor Co.* v. *Brandenburg*, 130 Iowa, 220, the supreme court of that state held an account for liquors sold in another state collectible in that state where the sale was forbidden, saying: "It is shown, however, without dispute, that the order given by defendant was made upon the plaintiff, a dealer in Minnesota, from which place the goods were to be shipped into this state. It is also shown without dispute that the authority of the traveling agent or salesman went no further than to make and transmit such orders subject to the approval of his employers, and that was the order sent in on behalf of the defendant. This was not a violation of the laws of Iowa, and the indebtedness thus contracted by the defendant is enforceable in our courts because the contract of sale is held to have been made in Minnesota, where it first became effective by the plaintiff's approval of defendant's order."

This case is quoted with approval in the case of *Frankel* v. *Hiller*, reported in 16 North Dakota, 387, 15 Am. & Eng. Ann. Cases, page 265. In the case of *Smith* v. *Godfrey*, 28 New Hampshire, 379, where the court deals with a case similar to the case at bar (except the plaintiff had knowledge of the intent to resell unlawfully by the vendee), that court quotes with approval the language used in the case of *Holman* v. *Johnson*, Cowp. 341.

The above case was referred to and quoted with approval in the case of *Hill* v. *Spears*, reported in the 50 New Hampshire at page 253, where that court reviewed the case of *Smith* v. *Godfrey*, *supra*, and went extensively into all the authorities on that subject, citing and dis-

cussing numerous cases of various courts. Without quoting from *Hill* v. *Spears,* I respectfully refer the court to that authority where every phase of the case at bar is considered and discussed by that court.

*D. M. Quinn,* for appellee.

I submit that the court could not consistently hold the appellee liable for a whiskey debt, even though the whiskey was purchased through letters written from the state of Mississippi to appellants in St. Louis, and the whiskey delivered to a common carrier in St. Louis for appellee's intestate in Mississippi. No state is required to give validity to or enforce a contract in this state, where contract is made in another state, if the contract is contrary to a statute in this state or is against the public policy of the state or against the good morals of the state.

In the case of *Smith* v. *Godfrey,* 61 Am. Dec. 618, and cited by counsel for appellants in support of the rule that contracts are to be decided by the law of the place where the contract is made, the court says, on page 619: "But there is some exceptions to this rule, and among them is this; that no nation is bound to recognize or enforce any contracts which are injurious to its own interests or to those of its own citizens, or which are in fraud of its laws. The laws of a country have no binding force beyond its territorial limits, and their authority is admitted in other states not *exproprio vigore* but *excomitate* and every community must judge for itself how far this comity shall be permitted to interfere with its domestic interest and policy; Story's Conflict Laws, section 244; 2 Kent's Commentaries, 457; *Andrews* v. *Pond,* 13 Pet. 65. Chancellor KENT says: "No people are bound to enforce or hold valid, in their courts of justice, any contract which is injurious to their public rights, or offends their morals or contravenes their policy or violates the public law." 2 Kent's Commentaries, 458. Story uses

this language: ''Contracts which are in evasion or fraud of the laws of the country or of the rights or duties of its subjects, contracts against good morals or against religion or against public rights and contracts opposed to the national policy or national institutions, are deemed nullities in every country affected by such considerations. Story's Conflict of Law, section 244.'' The court will note that this quotation is applied by the court to states as well as to countries, and is from an authority relied on by counsel for appellants.

''Foreign laws cannot *per se* operate extra-territorially.'' *Snede* v. *Ewing,* 22 Am. Dec. 47. ''A state will not enforce contracts made elsewhere by its citizens if they are in violation and fraud of its laws.'' *Hines* v. *Brazealle,* 32 Am. Dec. 307. ''No country will enforce a contract made elsewhere if an enforcement would be to its injury, or if the contract is of a kind prohibited by the provisions of positive law.'' Note to* the above-mentioned authority on page 310, citing *Saul* v. *Creditors,* 16 Am. Dec. 212, and note 231, and *Aroyo* v. *Currell,* 20 Indiana, 286.

The principle which seems to be clearly established by these authorities is that no foreign law by mere rule of comity can be allowed to counteract a general prohibitory law which regulates the policy of a state or in which law the citizens of the state are interested. *Mahorner* v. *Hooe,* 48 Am. Dec. 710, and note to same authority on page 715 where it is said: ''The principle is affirmed in *Wells* v. *Wells,* 35 Miss. 638, that where there is a conflict of laws, the rule of comity will not be permitted to prevail so as to allow a foreign law to counteract a general prohibitory law or to operate where it is repugnant to the general policy of the state and the spirit of its legislation.''

Counsel for appellants quotes a number of authorities to show that although the appellee's intestate may have intended to retail the liquors purchased in violation of the

prohibition laws of the state of Mississippi unless the appellants knew that fact, they were not bound by what appellee's intestate intended to do with the liquor. There is nothing in the record up to the filing of appellant's brief to show that there was any purpose on the part of appellee's intestate to sell the liquor against the laws of the state of Mississippi, and it must be that appellants' counsel was also aware of the fact that the courts have held that such qualities of liquor as were shipped to appellee's interstate by appellants was necessarily intended for an unlawful purpose when shipped into a prohibition state such as Mississippi was at the time of the sale in question, and is to this date.

"Contracts for slaves introduced into the state as merchandise, since the adoption of the revised Constitution, are void, being against public policy." *Glidwell* v. *Hite,* 4 Howard, 110; and *Cowan* v. *Boyce,* 5 Howard, 769.

"If the provision of the Constitution in regard to contracts for the purchase of slaves introduced into this state as merchandise, or for sale, since the first day of May, 1833, is not of itself a prohibition, when taken in connection with the legislation of the state, it so clearly settles the public policy as to avoid such contracts on the ground of being against public policy." *Green* v. *Robinson,* 5 Howard, 80, and *Brien v. Williamson,* 7 Howard, p. 14.

"All contracts which are in violation of law or public policy, or grow out of an immoral transaction, are void." *Brien* v. *Williamson,* 7 Howard, 14; *Wooten* v. *Miller,* 7 S. & M. 380; *Odi Neal* v. *Barry,* 24 Miss. 9; *Hoover* v. *Pearce,* 26 Miss. 64; *Deanes* v. *McLendon,* 30 Miss. 343; *Bank* v. *Stegall,* 41 Miss. 142; and *Barker* v. *Justice,* 41 Miss. 240.

"A party may waive a right secured to him by law, but he cannot bind himself by contract not to avail himself of such right if it be secured to him on the ground of public policy." *Ceane* v. *Grench,* 38 Miss. 503.

In the case of *Jackson* v. *Bowman,* 39 Miss. 671, and in which municipal authorities contracted for the erection of a commodious hotel within the corporate limits of a town, and agreed to allow as an inducement for the building of the hotel, the exclusive right to sell whiskey in the town for five years, and to refund the license money paid, and in case the town should grant license to another that the town would donate five thousand dollars, in aid of the' erection of the hotel, and after an act of the legislature had been passed seeking to validate the contract, the court held that if the corporate authorities insisted on the invalidity of the contract, it would not be enforced against them, notwithstanding the passage of the act. In other words, where the contract was void as being against public policy, our courts hold that it is still void, notwithstanding the act of the legislature seeking to validate it, whereas, in the case at bar, the appellants sold the whiskey to appellee's intestate in the face of the positive statute to the effect that the debt could not be collected in the courts of this state.

In the case of *Cotton* v. *McKinsey,* 57 Miss. 418, and in which case items of intoxicating liquors were charged in the account for family supplies, it is said: "The doctrine deducible from the multitude of authorities which we have examined as applicable to the main question in this case, is that if a contract is based on several considerations, some of which are merely insufficient and not illegal, it is not void, but may be upheld by a consideration which is sufficient; but if one of the several considerations of an entire contract, as a note is, be illegal, the whole contract is void. In *Coulter* v. *Robinson,* 14 S. & M. 18, the court said: "A distinction between the mere failure or want of consideration and its illegality is obvious. The principle which recognizes the distinction is founded in public policy." In *Scott* v. *Gillmore, ubi, supra,* a bill of exchange sued on was given to the keeper of a coffee house in payment of a debt, part of

which was for spirits furnished by the payee in small quantities not amounting to twenty shillings at one time, when the statute, 24 Geo. 11, ch. 40, paragraph 12, declared that no one should maintain an action for the price of spirits furnished in such small quantities. It did not declare in terms that any security for such price should be void. It was held that the consideration was illegal and the whole bill of exchange was void because given for this illegal consideration in part. If the statute declares any security taken for a matter prohibited, shall be void and an action is brought on a security taken for that which is unlawful, but is blended with that which is lawful, the whole security is void, because the letter of the statute makes it void and is a strict law.''

In the case at bar, the consideration as applied to the laws and public policy of the state of Mississippi is illegal and void, and will not support this action. See *Caradine* v. *Wilson,* 61 Miss. 573; *Sanford* v. *Sterling,* 69 Miss. 304; *Miller* v. *Chicago & N. W. Ry. Co.,* 141 N. W. 263; *Purity Extract & Tonic Co.* v. *C. C. Lynch,* 100 Miss. 650, 56 So. 316.

SMITH, C. J., delivered the opinion of the court.

Appellee's intestate was indebted to appellants for intoxicating liquors sold and delivered to him. The claim therefor was duly probated, and this proceeding was instituted to force appellee to pay the same. From a decree declining so to do, this appeal is taken.

Appellants are wholesale merchants, doing business in the city of St. Louis, and the liquor seems to have been sold or orders forwarded to them there, upon receipt of which they would deliver the liquor there to a common carrier for delivery to appellee's intestate. Chapter 115 of the Laws of 1908, among other things, provides:

''If any person shall trust or give credit to another for intoxicating liquor sold, he shall lose the debt, and be forever disabled from recovering the same or any part there-

of; and all notes or securities given therefor, under whatever pretense, shall be void.''

Appellants' contention is that this section has no application here, for the reason that the debt sued on was contracted in the state of Missouri. There is no merit in this contention, for the reason, that this section is not limited in application to debts due for intoxicating liquor sold in the state of Mississippi. It bars all persons from collecting in the courts of this state any debt so contracted. *Lemonius* v. *Mayer,* 71 Miss. 514, 14 So. 33. The statute was wholly unnecessary in order to prevent the collection of debts for intoxicating liquors sold in this state, for the reason that the sale of intoxicating liquor therein is illegal, and therefore the courts will not aid in the collection of debts due therefor.

*Affirmed.*