CROSBY *v.* FAROSE TRADING CORPORATION *et al.*

(In Banc.  Sept. 23, 1946.)

[27 So. (2d) 367.  No. 36096.]

**H. H. Parker,** of Poplarville, and **White & Morse,** of Gulfport, for appellant.

**Gardner & Gardner** and **Oscar Backstrom**, all of Gulf-port, for appellees, Frank A. Blevins and Rosa E. Blevins.

**Bidwell Adam,** of Gulfport, for appellee, Farose Trading Corporation.

**Alexander, J.,** delivered the opinion of the court.

Appellant is executor of the estate of V. B. Martin, deceased. Dr. Martin entered into an agreement with J. E. Blevins for the sale of warehouse receipts covering one hundred barrels of whiskey in storage in the State of Kentucky. The consideration for such sale was 75 shares of stock of Morrison Cafeteria. The stock was never delivered, and the pleadings, interpreted by the briefs filed by appellant, sustain the conclusion that, in lieu of delivery of the cafeteria stock, Dr. Martin was later delivered the note of Farose Trading Corporation in the sum of $4,363.94, secured by its mortgage upon certain real and personal property in the City of Biloxi.

Subsequent to execution of the mortgage, Farose Trading Corporation sold this property to one Frank Blevins and wife. This action was brought by Dr. Martin's executor to foreclose the mortgage as security for the note and decree for any deficiency. Frank Blevins and wife were made parties defendant, unquestionably because of their purchase of the mortgaged property. J. E. Blevins is not a party to this suit.

Complainant, to sustain his case, introduced the mortgage and note and the minutes of the corporation author-

izing their execution. Thereupon defendants moved for decree and same was awarded dismissing the bill.

We do not adjudge the sufficiency of the mortgage as recordable, nor whether Frank Blevins and wife had actual notice of its execution. Nor do we examine the authority of the corporation to execute the note and mortgage in lieu of the obligation of J. E. Blevins to deliver the cafeteria stock.

We are of the opinion that Section 2612, Code 1942, precludes maintenance of the action in this State. This section is as follows: "If any person shall trust or give credit to another for intoxicating liquors, he shall lose the debt, and be forever disabled from recovering the same or any part thereof; and all notes or securities given therefor, *under whatever pretense*, shall be void." (Italics supplied.)

There is no allowable debate of the proposition that the sale of standard negotiable warehouse receipts covering whiskey is a sale of the whiskey. J. E. Blevins, for reasons best known to him, did not pay for same and converted the receipts into cash without carrying out his agreement or offering so to do.

We are not concerned with the validity vel non of the agreement to buy the whiskey, or the extent of the legal obligation to pay therefor. Our decision is not intended to affect the legal status of this obligation if pursued in courts other than our own. We are dealing solely with a procedural matter affecting the remedy. Therefore, whether the sale or contract with Dr. Martin was effected in this State or elsewhere is not now relevant.

Had the contract in question been for a money consideration, or evidenced by a note or other evidence of debt, few would question the application of Section 2612. Certainly, Dr. Martin falls in the category of those who 'shall trust or give credit to another for intoxicating liquors.' It is only by tracing the assumed obligation of the corporation only so far as the failure of J. E.

Blevins to deliver the cafeteria stock, that the identity of the original obligation can be obscured.

To acknowledge that the corporation executed its note and mortgage in lieu of J. E. Blevins obligation, is to haul into plain view the nature of the latter. Running through all the subsequent manipulations is the persisting and persistent debt owing to Dr. Martin for his whiskey. It would not be self-serving for the appellant to insist that this obligation did not persist lest he undermine his case by revealing a total absence of considertion moving to the corporation. There is no showing of any obligation resting upon the corporation to make good the promise to deliver the cafeteria stock. The relationship, personal and commercial, between the Frank Blevins, managing head of the corporation, and J. E. Blevins, is not made certain by testimony, but an assumption that they are personal and business strangers would invoke a coincidence defiant of reasonable and obvious deduction.

To sustain any obligation on the part of the corporation, we must follow it down to its foundation, the cornerstone of which is the sale of whiskey. We are minded to reassert the possibility of a continuing legal obligation upon the part of J. E. Blevins, whose relationship to the grantee of the mortgaged property has been made the subject of interesting but legally irrelevant comment by appellant.

Appellant yields to a normal impulse in inveighing against the deliberate defiance of an obligation to pay the estate of Dr. Martin the not inconsiderable sum of $4,363.94. We can follow only as far as the statute his contentions, made with a vehemence and logic which are seldom inspired by any but a just cause. Purely ethical considerations we are not competent to discuss nor decide.

The obligation of the corporation cannot be seen in its full stature without revealing and invoking a credit extended for a debt whose enforcement in this State the statute forbids. The learned chancellor was compelled

to leave the parties where he found them. We are equally bound. Goodman v. Swett, 108 Miss. 224, 66 So. 535; Elkin Henson Grain Company v. White, 134 Miss. 203, 98 So. 531. See also Lemonius v. Mayer, 71 Miss. 514, 14 So. 33; Virden v. Murphy, 78 Miss. 515, 28 So. 851; Skinner Mfg. Co. v. Deposit Guaranty Bank, 160 Miss. 815, 133 So. 660; and Capps v. Postal Telegraph, etc., Company, 197 Miss. 118, 19 So. (2d) 491.

Affirmed.

**Sydney Smith, C. J.**, did not participate in this decision.

DISSENTING OPINION.

**McGehee, J.**, delivered a dissenting opinion.

Section 2612, Code 1942, under which the appellant was denied relief in the trial court, is highly penal, and it is well settled by the uniform decisions of this Court, and those in other jurisdictions, that such a statute is to be strictly construed against a litigant invoking its protection. It provides, in effect, that a creditor shall lose the debt, and that a note, and any security taken therefor, shall be void only where the credit is extended for the purchase price of intoxicating liquors. The intent and purpose of our prohibition laws is to prevent the transportation into, and the possession and sale of, intoxicating liquors in this State.

In my opinion it can be said with better reason that the note and mortgage, which are sought to be foreclosed on property in this State, were given by the Farose Trading Corporation of New Orleans, Louisiana, to satisfy the written obligation undertaken by J. E. Blevins Company, of New Orleans, Louisiana, to transfer and deliver to Dr. V. B. Martin, of Picayune, Mississippi, the 75 shares of Morrison Cafeteria preferred stock, than that the said note and mortgage were given to represent the purchase price of the intoxicating liquors called for by the warehouse receipts which Dr. Martin negotiated

and delivered in New Orleans, Louisiana, unto the said J. E. Blevins Company in exchange for the Morrison Cafeteria stock.

If this is the correct theory as to what consideration induced the execution of the note and mortgage, or if the same is supported by as good reason as the one to the effect that they were executed to represent the purchase price of intoxicating liquors, then the statute should not be applied. I think that the cases cited in the majority opinion can be distinguished from the instant case on the facts involved.

The pleadings disclose that Dr. Martin, as the owner of certain warehouse receipts issued under the Uniform Negotiable Warehouse Act of the United States calling for the 100 barrels of Kentucky Bourbon whiskey, the location of which is not shown, but assumed to have been in Kentucky, entered into a written "trade agreement" on May 20, 1937, with the J. E. Blevins Company, 307 Carondelet Building, New Orleans, for the exchange of the said warehouse receipts for the 75 shares of Morrison Cafeteria preferred stock. That in signing this agreement Dr. Martin gave his telephone number and his post office address at Picayune, Mississippi. But the agreement does not show on its face the place of its execution and delivery, or the place where the warehouse receipts were to be negotiated and delivered, or where the Cafeteria stock was to be received in exchange therefor. If, therefore, it is a violation of the law, or of any public policy of this State, to contract in Mississippi for the transfer of warehouse receipts for intoxicating liquors located in another state, it will be presumed, in the absence of any proof to the contrary, that the entire transaction occurred where the same is lawful. And no proof was offered by the defendants in support of this affirmative defense, so as to show that the transaction occurred in this State. The complainant alleged that the entire transaction took place in New Orleans, Louisiana, including the execution of the note and mortgage several months

later by the appellee, Farose Trading Corporation, to make good the default of the J. E. Blevins Company in carrying out its written obligation to transfer and deliver to Dr. Martin the Cafeteria stock. So far as the note and deed of trust are concerned, they show on their face that they were executed in New Orleans, Louisiana.

It further appears from the pleadings that Dr. Martin had promptly negotiated and delivered the warehouse receipts to the J. E. Blevins Company, pursuant to the trade agreement of May 20, 1937; and that the latter failed and refused to transfer and deliver to him the Morrison Cafeteria stock contracted for. Whether or not the J. E. Blevins Company owned any such Cafeteria stock at the time of the execution of the trade agreement, or had any intention of procuring the same for delivery to Dr. Martin as a consideration for the transfer of the warehouse receipts by him, does not appear. However, he had a right to assume that the said company was ready and able to transfer to him the said Cafeteria stock, and he was entitled to enforce specific performance of the said obligation in the courts of Louisiana, if such stock was available for that purpose; or, in the alternative, he was entitled to recover the value thereof.

After repeated demands by Dr. Martin for delivery of the Cafeteria stock to him by the said J. E. Blevins Company (as affirmatively alleged in the pleadings of the appellee defendants), or, on the other hand, that the said company should give back to him the said warehouse receipts calling for the 100 barrels of whiskey, it appears that the appellee, Farose Trading Corporation, in which the said J. E. Blevins was likewise largely interested, executed and delivered to Dr. Martin, at New Orleans, Louisiana, on November 15, 1937, the note and mortgage herein sued on; and as a consideration therefor the said appellee Trading Corporation thereupon obtained the release and cancellation of the obligation of the J. E. Blevins Company to transfer and deliver the said Cafeteria stock. Such release and cancellation in that behalf

is expressly noted on the face of the said trade agreement, the notation bearing date of December 8, 1937. Therefore, Dr. Martin relinquished an obligation in his favor which was legally enforcible in the courts of Louisiana as a consideration for the note and mortgage here involved, and it was a sufficient consideration therefor. In other words, Dr. Martin elected, as he had a right to do, to accept the note and mortgage in lieu of the Cafeteria stock or its value, instead of suing the J. E. Blevins Company for the proceeds of its sale of the warehouse receipts which it had converted to its own use.

Some time after the execution of the note and mortgage by the appellee Farose Trading Corporation pursuant to a resolution by its board of directors, authorizing the execution thereof, and a copy of which resolution the said Corporation caused to be furnished to Dr. Martin along with the said note and mortgage, the said appellee Trading Corporation sold and conveyed to Frank A. Belvins and wife the property covered by the mortgage, located in Biloxi, Mississippi, and in this deed of conveyance the appellees Frank E. Blevins and wife assumed, as a part of the consideration in the deed, the payment of any valid indebtedness against the property; and it is charged by the complainant that they were not only stockholders in the said Trading Corporation, but that they had actual notice of the existence of the note and mortgage on the property, and that the same was duly recorded in Harrison County, where the property is situated.

Neither the J. E. Blevins Company nor J. E. Blevins is a party to this suit. Frank A. Blevins and wife are not sued to enforce the collection of any credit extended to them for the purchase price of whiskey delivered to them in this state or elsewhere, but on their contractual obligation to pay the note and mortgage as part of the consideration in the deed to them, and which note and mortgage were executed, as aforesaid, to make good the

default of the J. E. Blevins Company in transferring and delivering to Dr. Martin the Cafeteria stock.

Moreover, no purchase price for the whiskey represented by the warehouse receipts was ever fixed, and the record fails to show that any sum was ever discussed as representing the value of such warehouse receipts. Dr. Martin may have considered the Cafeteria stock worth more than the value of the warehouse receipts, else he would not have offered to make the exchange. In order to avoid the application of this highly penal statute, I am of the opinion that we should assume that the note and mortgage which were executed several months after the transfer and delivery of the warehouse receipts, were executed as representing the value of the Cafeteria stock, which Dr. Martin had, in the meantime, been trying to get transferred and delivered to him. It was never contemplated by him that he was to get either money or a note and mortgage for the purchase price of the warehouse receipts, and he only accepted the note and mortgage in satisfaction of the obligation of the J. E. Blevins Company to transfer and deliver to him the Cafeteria stock, as is shown by the notation of the release of such obligation on the face of the trade agreement itself.

On June 8, 1945, when the final decree was rendered in the trial court, denying the aid of the courts of this State to the executor of Dr. Martin's estate, who was suing on behalf of his widow and children, to collect this indebtedness of approximately $4,000, growing out of a transaction which occurred in another state, the State had recognized for more than a year, and had expressly declared by Chap. 139, Laws 1944, the right of the State Tax Collector to invoke the aid of our courts to collect 10% of the proceeds of all sales made of intoxicating liquors in this State. Therefore, I am unable to say that to allow this executor to collect the debt here sued on would contravene any law or public policy now in force in Mississippi. And if the State can invoke the aid of the courts to collect for itself a part of the proceeds of

the whiskey sold in this State, then one of its citizens should not be denied the aid of its courts to enforce an obligation which indirectly grew out of a mere exchange of whiskey warehouse receipts in return for Cafeteria stock in another state, where the sale of such liquors is lawful. And if this is to be the State's public policy, I would scruple to assert that our public policy should be revised, modernized and improved. It occurs to me that it would be better that the very odd and confused public policy of our State which is to be gleaned from the statute prohibiting the sale of intoxicating liquors in this State, and that allowing the aid of the courts to collect for the State 10% of the proceeds of such sales should be contravened than that we should permit one of our citizens to be cheated and defrauded of $4,000 on a transaction had in another state, where the sale of such liquors is legalized, and where such transaction did not contemplate the bringing of any liquors within our borders.