154 So.2d 455 (1963)
BOLOGNA BROTHERS et al., Plaintiffs-Appellees,
v.
Mike T. MORRISSEY, Deceased, and Elizabeth M. Morrissey, et al., Defendants-Appellants.
No. 9946.
Court of Appeal of Louisiana, Second Circuit.
May 21, 1963.
Rehearing Denied June 20, 1963.
*456 Brunini, Everett, Grantham & Quin, Vicksburg, Miss., Sevier, Yerger & Sevier, Tallulah, for appellants.
Kizer, Heaton, Craig & Cangelosi, Baton Rouge, Lancaster & Baxter, Tallulah, Teller, Biedenharn & Rogers, Vicksburg, Miss., for appellees.
Before HARDY, GLADNEY and AYRES, JJ.
GLADNEY, Judge.
The obligations herein sued upon arose out of business transactions between Bologna Brothers, a Louisiana partnership engaged in the State of Louisiana in selling whiskey at wholesale, and Mike T. Morrissey, engaged in the business of selling whiskey in the City of Vicksburg, Mississippi. This suit was instituted in the Parish of Madison by Bologna Brothers as the holders and owners of certain promissory notes, made and executed by Mike T. Morrissey and Elizabeth M. Morrissey in the State of Mississippi, for the recovery of an indebtedness of $40,000.00 with interest and attorney's fees. While suit was pending Mike T. Morrissey died on February 20, 1960, and his legal heirs were substituted as parties defendants. All defendants are residents of the State of Mississippi and jurisdiction was acquired through attachment of property in Madison Parish. In response to plaintiffs' petition, an exception of no cause and no right of action was filed and by the court referred to the merits, after which issue was joined by answer, and the cause was tried on its merits. Judgment was rendered favorable to plaintiffs, as prayed for, with maintenance of the lien and privilege resulting from the writs of attachment. From this decree the defendants have appealed.
During December of 1953 Morrissey purchased from plaintiffs, who conducted wholesale establishments in Baton Rouge and Bogalusa, Louisiana, whiskey of the value of $75,000.00. On December 22, 23 and 29, 1953, the whiskey was placed upon Morrissey's truck in Baton Rouge for the purpose of being transported to Morrissey's place of business in Vicksburg. In connection with each purchase Morrissey sent his truck, driven by his driver, Melvin Fendley, who was fully authorized by Morrissey under power of attorney to sign invoices, accept deliveries and act for and on behalf of his principal in securing and transporting the whiskey to Vicksburg. In each instance a representative of the Department of Revenue of the State of Louisiana witnessed the loading of the liquor into Morrissey's truck, and issued an export transportation permit to Morrissey, permitting his driver, Fendley, to transport the merchandise out of the State of Louisiana to Morrissey's premises at Vicksburg, Mississippi. By this procedure under LSA-R.S. 26:372 such exported beverages were not subject to the Louisiana tax. In order to secure such permit Fendley swore that the alcoholic beverages were purchased from *457 plaintiff in Louisiana. After deliveries were made to Morrissey, the latter's checks given in payment of the invoices for the whiskey were dishonored.
On January 22, 1954, Morrissey caused some ten promissory notes to be drawn up by Leo Boolas, a certified public accountant in Vicksburg. These notes, each in the sum of $5,000.00, were payable at one year intervals, to Bologna Brothers at the Merchants National Bank & Trust Company of Vicksburg. The notes were signed by Elizabeth M. Morrissey and Mike T. Morrissey, as co-makers. On August 30, 1956, two of these notes were renewed by the same parties. All of the notes were executed, delivered and made payable in Vicksburg, Mississippi. Mrs. Morrissey, while admitting to her signature on the notes, testified she knew that her late husband was engaged in the liquor business, but that she had no interest in the business and never took part in it in any way, she having signed the notes as a good wife to help her husband. It was further shown that the property of Mrs. Morrissey seized and attached in this suit in Madison Parish, was her separate property, having been inherited from an aunt.
The defense does not deny Mike T. Morrissey purchased the whiskey in question from plaintiffs as alleged, nor do the defendants deny Morrissey sold the whiskey in the course of his business in Vicksburg, and that the whiskey has not been paid for. Their reason for non-payment of the obligations is on the basis of a Mississippi prohibition statute which provides that if any person gives credit to another for intoxicating liquor, he shall lose the debt.
Plaintiffs insist the particular sales under consideration were made in Louisiana, that the notes sued upon, although executed in Mississippi, were given for Louisiana purchases and were valid in Louisiana as Louisiana contracts. The trial court found that when the liquor was loaded on Morrissey's truck in Louisiana, Bologna Brothers lost control of it and it became Morrissey's property, and that the sale in question was a Louisiana sale, consummated and completed in this state. According to defendants the sales took place at Vicksburg, Mississippi, where they contend Bologna Brothers maintained a large stock of merchandise and sold to Morrissey for cash and delivered it to him from a separate enclosure in Morrissey's warehouse. The trial judge could see no connection between what was called the enclosed whiskey and the whiskey sold by Bologna Brothers to Morrissey in December of 1953, and concluded that the notes, although executed in Mississippi, were in payment of a Louisiana obligation and were, therefore, governed by the laws of this state, and not Mississippi.
On the appeal appellants urge that the judgment of the trial court is in error in finding that the sales of liquor from Bologna Brothers to Morrissey in December of 1953 were completed in Louisiana rather than in Mississippi, and also was in error in its application of the law of the State of Louisiana in determining the validity of the notes sued upon. It is further argued by appellants that when the children of Mike T. Morrissey after his death were made substituted parties, such was done with reservation of their rights and without prejudice under articles 801-805 of the LSA Code of Civil Procedure, and accordingly, the judgment as rendered should have been limited to their liabilities as heirs of Morrissey to the assets of his succession.
The appellants charge the trial court first erred in not finding the liquor sales in question were completed in Vicksburg, at which place full ownership passed to Mike T. Morrissey. In support of this contention Mrs. Alice Woody and Carlisle Long testified as to the manner in which stocks of liquor purchased from Bologna were handled on the Morrissey premises during a period in the latter part of 1953 or the first part of 1954. During 1953 an employee of Morrissey named Johnny Serio was in charge of the stock and some time in 1954 he was succeeded by Carlisle Long. Serio did not testify. The effect of the *458 testimony is that the liquor purchased from Bologna was kept in an enclosure which was separated from that of other whiskey purchased by Morrissey; that when Serio was in charge the whiskey removed from the Bologna stock was accounted for by a check from Morrissey, counter-signed by Serio, which check was promptly deposited to the account of Bologna; and that after Long took charge the withdrawals were handled on a cash basis. Mrs. Woody's testimony leaves considerable doubt as to whether this arrangement commenced prior to the receipt of the December purchases which are here involved. That whiskey was not identified and perhaps only Serio could have made such an identification. The purpose of the testimony was to show that delivery of the whiskey purchased from Bologna did not occur until it was dispensed by Serio or Long from the enclosed stock on Morrissey's premises. This evidence as to the passage of title to the liquor with which we are concerned in this case, is most unsatisfactory and we are in accord with the views of the district judge on this issue. Consequently, it is our holding that a preponderance of the evidence shows the purchases made during December of 1953 were unconditional and delivery was complete and the sales were consummated when such merchandise was loaded upon Morrissey's truck and placed in care of his driver, Fendley.
The requirements for a completed sale are set forth in Articles 2439 and 2456 of the LSA-Civil Code, and read:
"Art. 2439.
"The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
"Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent.

* * * * * *
"Art. 2456.
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
The prices for each purchase were shown on the invoices made up upon each of the three transactions and there was immediate delivery of the whiskey at the time of each sale on to the truck of Morrissey at Bologna's places of business in Louisiana. These sales and the debts arising out of them are traced directly to the notes sued upon. Mr. Boolas verified the debts for which he prepared said notes. The evidence is void of any circumstance indicating that the transactions were not complete upon delivery at the time when the whiskey was loaded on the trucks. The driver of the truck, Fendley, signed an affidavit under power of attorney of Morrissey stating that the beverages "were purchased". This declaration of purchase was required in order to secure an export permit for immediate transportation out of Louisiana.
Although appellants have seriously argued that the ownership of the liquor passed to Mike T. Morrissey in Vicksburg, Mississippi, and that there was no sale until this happened, they next assert that the question of whether or not the sale was made in Mississippi or Louisiana is immaterial forasmuch as the notes would still be void and uncollectible.
The cited prohibitory statute, Section 2612 of the Mississippi Code of 1942, reads:
"§ 2612. Debt for liquors not collectible. If any person shall trust or give credit to another for intoxicating liquors, he shall lose the debt, and be foreever disabled from recovering the same or any part thereof; and all notes or securities given therefor, under whatever pretense, shall be void." *459 Appellants say that this statute renders the notes sued upon void as they were admittedly given in evidence for a debt for intoxicating liquors. Counsel for appellees, controverting this argument, take the position that the promissory notes sued upon are merely evidences of the indebtedness which arose from the sales completed in Louisiana and that the casual and incidental way that the notes were signed and delivered in Mississippi is the sole connection of that state with these transactions. The import of this premise is that the indebtedness evidenced by promissory notes exists independently of the notes and the instruments are merely a facility of the creditor in proving the fact of the obligation. The rule of law so stated is well recognized in this state. Article 1762 of the LSA Civil Code states:
"The contract must not be confounded with the instrument in writing by which it is witnessed. The contract may subsist, although the written act may, for some defect, be declared void; and the written act may be good and authentic, although the contract it witnesses be illegal. The contract itself is only void for some cause or defect determined by law."
Holding that a creditor by proving the existence of an indebtedness may recover therefor although the note is invalid for some reason, are the following Louisiana cases: Achee v. Williams, 6 La.App. 316, 319 (2d Cir., 1927); Armato v. Ross, et al., La.App., 170 So. 400 (Orl.1936); Cook v. Crow, La.App., 194 So. 455 (2d Cir. 1939); and Lerner v. Bischoff, et al., La.App., 193 So. 236 (Orl.1940).
Relying strongly upon Louisiana LSA Civil Code Article 10, counsel for appellants declare that since the notes indicate they were signed and delivered in Mississippi and provided for payment in Mississippi, their validity must be determined by the law of the State of Mississippi. Article 10 provides that the form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed, and continuing, it says the effect of acts passed in one country to have an effect in another country, is regulated by the laws of the country where such acts are to be effected. As a rule the nature, validity and construction of a contract is determined according to the lex loci contractus and the remedy according to the lex fori. Lynch v. Postlethwaite, 7 Mart., O.S., 69, 12 Am.Dec. 495 (1819); LSA-C.C. Art. 10. The general rule was well expressed in Saul v. His Creditors, 5 Mart., N.S., 569, 16 Am.Dec. 212 (1827); Depau v. Humphreys, 8 Mart., N.S., 1, 34 (1829); and in Miles v. Oden, 8 Mart., N.S., 214, 221, 19 Am.Dec. 177 (1829), where the court stated:
"The courts are aware of the common principle, that contracts are governed by the laws of the country in which they are passed; and that, by the comity of nations the rights, flowing from them, are not diminished by the parties passing into other states:Provided, the laws of that state afford adequate remedies to enforce the obligation. But this principle is subject to the exception, that in carrying them into effect, no injury result to the inhabitants of the country whose aid is required to enforce them. * * *"
See also Restatement of Conflict of Laws, Sec. 322. The rule is the same for promissory notes. Their legal effect is governed by the law of the country where they were executed and delivered. Kuenzi & Co., v. Elvers, Boje & Co., 14 La.Ann. 391, 74 Am.Dec. 434 (1859); Walsh v. Walsh, La.App., 11 Orl.App. 205 (1914); aff. 137 La. 157, 68 So. 392 (1915); Stevens v. Gaude, 9 La.App. 664, 120 So. 79, 80 (1st Cir. 1928); Restatement of Conflict of Laws, Sec. 336. Accommodation papers are no exception to this rule. It is settled in Louisiana that every endorsement, accommodation or otherwise, is essentially an *460 original contract, equivalent to a new note or bill in favor of the holder and that accommodation paper is governed by the same rules as other paper. Crane v. Trudeau, 19 La.Ann. 307 (1867); James Trabue & Co. v. R. H. Short & Co., 18 La.Ann. 257, 258 (1866); G. F. Connely v. A. Bourg, et al., 16 La.Ann. 108, 109, 79 Am. Dec. 568 (1861). The obligation of an endorser or accommodation party is governed by the lex loci contractus. James Trabue & Co. v. R. H. Short & Co., supra; Duncan v. Sparrow, 3 Rob. 167, 168 (1942).
Another familiar rule in the conflict of laws is that the law of place where a contract is sought to be enforced will govern as to remedy. Wilcox v. Hunt, 1839, 38 U.S. 378, 13 Pet. 378, 10 L.Ed. 209; Hamilton v. Glassell, C.C.A.La., 1932, 57 F.2d 1032; Jackson v. Tiernan, 1840, 15 La. 485. It is recognized that procedural law is remedial in character. The position of appellants is in effect that the Mississippi prohibition statute is substantive in character. If this be true, the courts of this state are obliged to recognize it as such. It is our opinion, however, that the statute is plainly procedural for its effect is not to destroy the obligation affected by it, but to render the obligation unenforceable in the courts of Mississippi. Louisiana does not have such a statute, nor a legislative act prescribing such a policy. Our courts are required to remain open to enforce, inter alia, all lawful obligations within their jurisdiction.
"* * * Clearly the local procedure must be applied.
"But what is the so-called procedural, or remedial, or adjective law, as distinguished from substantive law? The two areas of law shade into each other constantly.
"For one thing, the law of Conflict of Laws is itself procedural law. It is usually, but not always, the law of Conflict of Laws of the forum that is applied. That being true, it follows that the law of the forum normally determines for itself whether any particular rule of law, local or extrastate, is to be characterized as procedural or substantive. Thus, if a rule of Louisiana law is involved in a case tried in New York, the New York court might properly deem it procedural therefore inapplicable even though the Louisiana courts had declared it substantive either for Conflict of Laws purposes or other purposes. * * *" Leflar, The Law of Conflict of Laws, (1959), § 60, p. 109.
"The court at the forum determines according to its own Conflict of Laws rule whether a given question is one of substance or procedure." Restatement of Conflict of Laws, Sec. 584. See also Pascal, "Characterization as an Approach to the Conflict of Laws", 2 LLR 715 (1940).
The underlying indebtedness is a lawful obligation resulting from a sale consummated in this state. Our courts have been asked to enforce its collection. Resistance is predicated on a Mississippi statute which reflects nothing more than a legislative statement of public policy unrecognized in this state. To uphold the bar to collection would result in our courts leaving defenseless the owners of a lawful obligation not repugnant to our law. It would permit the defendant debtors to be unjustly enriched and, in effect, our courts would be allowing the Mississippi statute to impair a just obligation otherwise enforceable in our courts. Under these circumstances Louisiana is not required to follow Mississippi public policy and Article 4, Section 1 of the Constitution of the United States, the full faith and credit clause, does not require the courts of this state to substitute the Mississippi statute for its own statutes, dealing with the matter with which our Legislature is competent to legislate. Am.Jur. Vol. 12, "Constitutional Law", Section 708, p. 383.
*461 The Supreme Court of the United States in Magnolia Petroleum Company v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, 154 (1943), stated the matter as follows:
"In the case of local law, since each of the states of the Union has constitutional authority to make its own law with respect to persons and events within its borders, the full faith and credit clause does not ordinarily require it to substitute for its own law the conflicting law of another state, even though that law is of controlling force in the courts of that state with respect to the same persons and events. Pink v. A.A.A. Highway Exp., Inc., 314 U.S. 201, 209-211, 62 S.Ct. 241, 246, 247, 86 L.Ed. 152 [157, 159], 137 A.L.R. 957, and cases cited; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-498, 61 S.Ct. 1020, 1021, 1022, 85 L.Ed. 1477 [1480, 1481]."
In the case of Hartford A. & I. Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178 (1934) it was held that:
"A state may limit or prohibit the making of certain contracts within its own territory (citing authorities); but it cannot extend the effect of its laws beyond its borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction, and lawful where made (New York Life Insurance Company v. Head, 234 U.S. 149, 34 S.Ct. 879, 58 L.Ed. 1259; Etna Life Insurance Company v. Dunken, 266 U.S. 389, 399, 45 S.Ct. 129, 69 L.Ed. 342). Nor may it in an action based upon such a contract enlarge the obligations of the parties to accord with every local statutory policy solely upon the ground that one of the parties is its own citizen. Home Insurance Company v. Dick, 281 U.S. 397, 407, 408, 50 S.Ct. 338, 74 L.Ed. 926 [933], 74 A.L.R. 701."
Recently a facet of the controversy between the parties herein was decided by the Supreme Court of Mississippi. It is urged the decision insofar as it construes the Mississippi statute involved in the instant case is controlling.
In Morrissey v. Bologna, 240 Miss. 284, 123 So.2d 537 (1960), appeal dismissed, certiorari denied 366 U.S. 212, 81 S.Ct. 1091, 6 L.Ed.2d 239, Miss Hazel Morrissey filed bills in a Mississippi chancery court to cancel certain deeds of trust held by Bologna's trustee as clouds on her title to lands described therein, alleging the deeds of trust were void on the ground that the indebtedness arose out of the sale of intoxicating liquor in violation of the laws of Mississippi and that under Section 2612 the debt claimed and the notes and security therefor were void and unenforceable. The Supreme Court of Mississippi held that under Section 2612, Code of 1942, Bologna had lost his debt, and his notes and deeds of trust were void.
Gillespie, J., with whom Ethridge, J., joined, dissented on the ground that Mrs. Elizabeth Morrissey, who had conveyed the property covered in the deeds of trust to Hazel Morrissey, her husband's sister, was in pari delicto with Bologna and was therefore disqualified to call forth the activities of the courts to aid her in escaping the consequences of her own illegal act. It is interesting to note his comments:
"* * * The public policy behind all the law denying relief to either party to an illegal contract is to deny to wrongdoers the processes of the courts. * * * The purpose is not solely to deny to the creditor his debt or to aid the debtor in escaping payment of what he honestly owes, as between the parties. Indeed, from the early cases we note that the formulators of the policy embodied in our statute recognized that as between the parties the debt should be paid; that it was not for the sake of the debtor in an illegal transaction *462 that a remedy was denied the creditor, but considerations of the policy already stated above. * * *"
See also: Goodman v. Swett, 108 Miss. 224, 66 So. 535, 536 (1914); Crosby v. Farose Trading Corporation, 200 Miss. 369, 27 So.2d 367 (1946).
Gillespie, J., also remarked, "The statute is merely a codification of the common law with reference to illegal contracts." That is, "Relief under an illegal contract is denied, not because the contract is void, but by reason of the fact that courts refuse to lend aid to a person who founds his cause of action upon his own immoral or illegal act." Lido Capital Corporation v. Eskelsen, 162 Misc. 323, 295 N.Y.S. 163, 164 (1936). In relation to this principle it is significant that laws pertaining to the illegality of usury and gambling contracts are often treated as essentially procedural rather than substantive in their effects. See: Deposit Guaranty Bank & Trust Co. v. Williams, 193 Miss. 432, 9 So.2d 638, 639 (1942); Corbin on Contracts, Vol. 6A, § 1484, p. 646.
We regard Section 2612 of the Mississippi Code of 1942 as a procedural statute. For reasons of public policy Mississippi courts refuse to aid a creditor seeking to recover on a note given as evidence of a debt for intoxicating liquors, not because the note is void, but because the courts will not aid a person who founds his cause of action upon his own immoral or illegal act. The notes are not essentially invalid, they are simply non-enforceable in a Mississippi court. In this determination we feel we are consistent with the position of the Mississippi courts and the views expressed in the Restatement of Contracts, Sec. 598, which provides as follows:
"A party to an illegal bargain can neither recover damages for breach thereof nor, by rescinding the bargain, recover the performance that he has rendered thereunder or its value, except as stated in §§ 599-609."
"Comment: (b) To deny such persons recovery, though an equally guilty defendant thereby escapes punishment, tends to diminish the number of illegal agreements. But not all illegal agreements are for that reason void. A rule to that effect would have unfortunate consequences, since in many cases it would protect a guilty defendant from paying damages to an innocent plaintiff, or would otherwise produce undesirable results. * * * Doubtless a statute can and sometimes does make a bargain absolutely void, but even though a statute so states in terms, `void' sometimes means voidable, and unless no other conclusion is possible from the words of a statute, or from the policy on which a statute is based, it should not be held to make all agreements contravening it wholly void."
We are aware of no law of this State or consideration of public policy which would prevent plaintiff from recovering on the notes. On the contrary, the language of Holmes, J., in his dissent in Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 271, 29 S.Ct. 280, 296, 53 L.Ed. 486, 509 (1909) may be appropriately quoted in this opinion. In that case Holmes weighed the relative importance of considerations of public order and expressed the general policy, recently described by the Supreme Court of the United States as "overriding", or "preventing people from getting other people's property for nothing when they purport to be buying it." Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959).
The error last complained of by appellants is that when the children of Mike T. Morrissey, after his death, were made substituted parties, such was done with reservation of their rights and without prejudice under Articles 801 through 805 of the Louisiana Code of Civil Procedure, and accordingly, the judgment as rendered should have restricted their liability to the assets of his succession. From an examination *463 of these articles we find no reservation upon their acceptance of their father's succession, and, in our opinion, the judgment is correct in its determination of their liability for their father's debt.
Finding no error in the decision from which appealed, it will be affirmed at appellants' cost.