THE FIDELITY & CASUALTY COMPANY OF NEW YORK *v.*
STATE BUILDING COMMISSION, et al.

No. 40088 May 7, 1956 87 So. 2d 449

38

*Watkins & Eager, Wm. E. Sudduth, Jr.,* Jackson, for appellant.

*Young & Daniel, J. E. Skinner,* Jackson, for appellees.

McGehee, C. J.

The only real parties interested in the controversy involved on this appeal are the appellant Fidelity & Casualty Company of New York on the one hand, and the appellees Lamar F. Easterling, special master, J. E. Kirkland and R. W. Naef, arbitrators, and S. T. Lloyd and Mrs. Clara M. Sims, court reporters, on the other. The instant case only involves certain court costs due the above mentioned cost-claimants, to wit: Lamar F. Easterling, as special master, the sum of $500, the two arbitrators the sum of $1,200 each, the court reporter S. T. Lloyd the sum of $339, and the court reporter Mrs. Clara M. Sims the sum of $285, for services rendered in the case of Arthur Horne, d. b. a. Horne Plumbing, Electric and Supply Company, contractor, v. Mississippi State Building Commission.

The questions now before this Court for the first time are: (a) The issue of whether or not the chancery court had the power under Section 1670, Code of 1942, to correct, on March 28, 1955, a decree rendered by it on July 31, 1953, which had been affirmed and the cause remanded by this Court on December 20, 1954, in the above mentioned case of Arthur Horne, d. b. a., etc. v. State Building Commission, as reported in 222 Miss. 520, 76 So. 2d 356, so as to include a finding of liability against a $2,000 supersedeas bond given by the said appellant therein and the Fidelity & Casualty Company of New York on April 13, 1953, in connection with an interlocutory appeal to this Court as of that date, in addition to the finding of liability made on July 31, 1953, against their $1,500 cost bond given in the said trial court on September 17, 1951. (b) Whether or not the trial court would have had the legal right to have included in the decree of July 31, 1953, a finding of liability against the appellant surety company on the $2,000 supersedeas bond of April 13, 1953, even if his attention had been called to the existence of this bond at the time he signed that decree.

The decree of March 28, 1955, now appealed from corrected the decree of July 31, 1953, so as to adjudicate that the liability of the surety company on three bonds executed by it on behalf of Arthur Horne amounted to $3,600; whereas such liability was, by mistake or inadvertence, etc., limited under the decree of July 31, 1953, to the sum of $1,500, on account of the fact that the attorney who prepared the decree, and who did not represent any of the parties to the present appeal, overlooked at that time the existence of the $2,000 supersedeas bond as a part of an eight-volume record, and this bond was not called to the attention of the court when the decree was signed. The surety has paid $20.80 Supreme Court costs, and hence the Court by the decree

herein appealed from directed the surety to pay the additional sum of $2,079.50 into the registry of the court to apply on the cost claims of the appellees herein.

The attorney who prepared the decree testified upon the hearing to amend the decree of July 31, 1953, so as to include liability against the appellant surety company on the $2,000 supersedeas bond that: ''The $2,000 bond simply never entered my mind at all. I completely overlooked it. I had never read the bond. I did get out the $1,500 bond and read it, but the $2,000 bond simply never entered my mind when I was endeavoring to draft this decree.''

The costs due the appellees amounted to $3,524 for their services as special master, arbitrators and court reporters, respectively, and it had all been incurred at the instance of Arthur Horne, the principal in the $2,000 supersedeas bond prior to the execution thereof, and the board of arbitration had already awarded said costs against him under the express authority of the arbitration agreement, as the losing party to the submitted controversy, and which costs he had therein agreed to promptly pay ''as awarded by the board of arbitration.'' The cost-bill showing the costs awarded against the said contractor had already been reported to the court when the $2,000 supersedeas bond was executed, and of course the appellant herein, Fidelity & Casualty Company necessarily knew that the supersedeas bond would stay the right of the cost-claimants to insist upon the prompt payment of their cost-claims, then in excess of the $1,500 cost bond on which said company had previously become the surety, and also the surety knew that the same would stay the right of the cross-claimants to the prompt payment of their cost even under the $1,500 bond theretofore given, pending the appeal with supersedeas.

Subsequent to the affirmance and remand of the case of Horne, d.b.a., etc. v. State Building Commission, on

December 20, 1954, by this Court on the final appeal thereof, the appellant herein, Fidelity & Casualty Company, interpleaded these cost-claimants and paid into the registry of the chancery court the amount of the $1,500 bond. The pleading filed on February 18, 1955, as a "motion by way of interpleader" stated that "some of the claimants are contending that the liability of the Fidelity & Casualty Company of New York is not limited to the penalty of said $1,500 bond", and the jurisdiction of the court was invoked to determine the rights of the said claimants, naming them, to share in the fund of $1,500, and the court was further asked to "declare that the Fidelity & Casualty Company of New York is forever discharged and released from any and all other liability of whatsoever nature to the said * * *", cross-claimants, naming them. And the petition prayed that citation be issued to them to show cause why such adjudication should not be made. Upon notice given to the cost-claimants, they filed responses and claimed liability against the $2,000 supersedeas bond given in connection with the interlocutory appeal to this Court which was dismissed on June 8, 1953, as not being entertainable. As a result of the hearing on the motion by way of interpleader on March 28, 1955, the court, at the instance of the cost-claimants who had been interpleaded, corrected its former decree of July 31, 1953, in the manner hereinbefore stated.

Section 1670, Code of 1942, reads in part, as follows: "Errors in general, corrected—changes in trial records, corrected.—Where, in the record of a judgment or decree of any court of law or equity, there shall be a mistake, miscalculation, or misrecital of any sum of money, quantity of anything, or of any name, *and there shall be among the records of the proceedings in the suit any verdict, bond, bill, note or other writing of the like nature or kind, * * * whereby such judgment or decree may*

*be safely amended,* it shall be the duty of the court, \* \* \* to amend such judgment or decree thereby according to the truth, but the opposite party shall have reasonable notice in writing of not less than three days of the application for the amendment. And if the transcript of such judgment or decree at the time of the amendment, or at any time thereafter, be removed to the Supreme Court, it shall be the duty of that court, upon the inspection of such amended record, to be brought before it by certiorari if need be, to affirm the judgment \* \* \*"
(Italics ours.)

Presumably the contractor, who had initiated the arbitration proceedings, intended when he deposited the $2,000 in cash that it should be for the protection of the arbitrators, court reporters and others whom he had agreed to promptly pay. In fact, he had paid the arbitrator whom he selected and induced to serve, the sum of $2,080, and made partial payments to each of the court reporters. Since he was able to put up the sums of more than $4,000 in cash, including the cash deposit of $2,000 on this supersedeas bond, he was evidently solvent at that time.

It will be noted that the above quoted provisions of Section 1670, supra, contains no limitation as to the time within which a mistake, miscalculation or misrecital in a judgment or decree may be corrected where "there shall be among the records of the proceedings in the suit any verdict, bond, bill, note, or other writing of the like nature or kind \* \* \* whereby such judgment or decree may be safely amended." In other words, the statute does not require by its terms that the amendment be made prior to the affirmance of the judgment or decree by the Supreme Court.

It is to be conceded that there is no decision of this Court that precludes the exercise of the power conferred on the trial court by the statute in proper cases

after the judgment or decree sought to be corrected has been affirmed by this Court. The only decision referred to in the briefs which has any bearing on such right is that of Huddleston v. Huddleston, 132 Miss. 55, 95 So. 674, which was a suit for the partition of land where the decree ordering the partition had limited the interest of Rafe Huddleston to a remainder interest, whereas he owned a one-fourth undivided interest in fee of the land. After the decree of the court was rendered, adjudicating the respective interests of the parties to the suit in the lands described, an interlocutory appeal was allowed to settle the principles of law involved. After the affirmance of the decree as written, so adjudicating the interest of the respective parties in the land, on such interlocutory appeal and the remand for partition, the court below was asked to correct the decree so as to adjudicate that Rafe Huddleston owned a one-fourth undivided interest in fee in the land instead of merely a remainder interest. The trial court overruled the motion to correct, reciting in its decree overruling the motion that the court was "of the opinion that it is without power to amend the said decree, even though the error complained of should be found to exist * * *"

An appeal was taken from that decision of the trial court and the case was reversed, this Court holding that the trial court "did have power to change the decree on motion, if such a mistake exists." This Court then cited the case of Brown v. Wesson, 114 Miss. 216, 74 So. 831, wherein it was held "that the chancery court had jurisdiction of a mistake, and that mistake was an independent jurisdiction of equity. That being true and all the parties in interest being before the court, we see no reason why the court could not exercise jurisdiction upon motion, this being a proceeding in equity and not a proceeding at law. * * *"

The only parties interested in whether or not the decree of July 31, 1953, should be amended were the ap-

pellant surety company and the cost-claimants, all of whom were before the court in the interpleader proceeding.

The chancellor in his order amending the former decree (of July 31, 1953) expressly found, among other things, that: "* * * the liability of Fidelity & Casualty Company of New York was, through mistake, misrecital, miscalculation and inadvertence, limited to $1,500 instead of $3,500, and the court, therefore, being further of the opinion that the said Fidelity & Casualty Company of New York is liable on the bond in the penal sum of $2,000, dated April 13, 1953, it is therefore, ordered, adjudged and decreed that the paragraph numbered '2' of said decree of July 31, 1953, should be and the same is hereby corrected to read as follows:" (The court here then adjudges and decrees that the said cost-claimants, naming them, are entitled to recover the respective amounts owing to them, hereinbefore mentioned, as against the said Fidelity & Casualty Company of New York, as surety on all three bonds of Arthur Horne to the extent of $3,600, and ordered that execution be issued therefor. This appeal by the said surety is from that decree."

The contract of Arthur Horne with the State Building Commission was entered into on May 8, 1948, and whereby he obligated himself to furnish all materials and to perform all work incident to installation of all heating and plumbing facilities for the Mississippi Schools for the Deaf and for the Blind. In the progress of the work, disagreements arose between the contractor and the State Building Commission as to the manner in which the work was being performed, as a result of which disagreements Horne demanded arbitration. The Building Commission agreed to the arbitration as provided for in the contract, which stipulated that: "The arbitrators shall fix their own compensation, unless otherwise provided by agreement, and shall assess the costs and charges of the proceedings upon either or both par-

ties." The board of arbitration was duly organized, with the appellee Naef serving as the arbitrator for the State Building Commission, Griffith C. Burr as arbitrator for the contractor, and J. E. Kirkland as the third arbitrator, selected by the other two.

The contract further provided that: "The arbitrators shall fix their own compensation, based upon the amount of the claim involved, and upon the number of hearings unless otherwise provided by agreement *and shall assess the costs and charges* of the proceedings upon either or both parties." (Italics ours.)

In his "Suggested Finding of Fact and Conclusion", the contractor stated that: "* * * the parties hereto agreed prior to the opening of this arbitration that the costs or expenses including the cost of reporters to record the testimony, the compensation of the arbitrators and all other actual expenses of this arbitration shall be paid promptly upon the rendering of the decree in this arbitration as adjudicated by this board." We think that it was therefore contemplated that the decree in the arbitration should be rendered in accordance with the adjudication of the board of arbitration, and that the board, the members of which were to fix their own compensation and employ court reporters, was vested with full authority to assess the costs and make the award therefor against either party, as was done. Moreover, we held in Horne v. State Building Commission, 222 Miss. 520, 76 So. 2d 356, that this award was valid and broad enough to settle the dispute between the parties; that the supplemental award thereafter made added nothing thereto. In other words, we held in effect that the original award should have been confirmed by the chancellor as being all sufficient; it had awarded against Horne all the costs shown by the cost-bill attached to the report of the board of arbitration on file at the time the $2,000 supersedeas bond was executed. In the case last above mentioned, the cause was "remanded for fur-

ther proceedings not inconsistent with this opinion.''
There does not appear in the decree now appealed from
anything inconsistent with the opinion rendered in the
case, supra, since the court therein cited cases as to the
effect of an arbitration agreement, and particularly the
case of Yarbro v. Purser, 114 Miss. 75, 74 So. 425, 427,
wherein it was held that an award made under such an
agreement is ''the exclusive source of the rights and lia-
bilities of the parties.'' If so, the liabilities of Horne
for these costs was certain when the $2,000 supersedeas
bond was given. The surety then knew it, and it then
collected $2,000 in cash from Horne and should not be
heard to now say that it collected this cash deposit for
its own protection on a prior bond of $1,500, and not for
the protection of the cost-claimants whose rights to the
prompt payment of their cost-claims had been supersed-
ed thereby. To let the surety succeed in its contention
that this supersedeas bond of $2,000 on which it required
the deposit of $2,000 in cash by its principal is a mere
Supreme Court cost-bond would be to sanction a trifling
with the courts in the matter of the giving of a super-
sedeas bond which the surety now says was liable only
for a small amount of Supreme Court costs in compari-
son with the penal sum of such bond. The surety should
not be thus permitted to take advantage of the mistake
of inadvertence which crept into the decree of July 31,
1953, when its liability was erroneously limited to $1,500
—the recital by the chancellor in the correction decree
now appealed from and the testimony of the attorney
who prepared the amended decree being uncontradicted
that there was a mistake, oversight and inadvertence in
the preparation and rendition of the amended decree.
The arbitration award of the board of arbitration was
rendered and filed, and there was attached thereto a cost-
bill for the services of the arbitrators, reporters, etc. The
board of arbitration made an award of the costs against
the contractor. He then paid his own arbitrator Griffith

C. Burr in full for his services in the sum of $2,080, and made a partial payment to each of the court reporters on the total amount due.

When the original report of the arbitrators was made to the court in April 1953, the contractor moved that the award be vacated and the motion was overruled by the chancellor, who then remanded the cause to the arbitrators for further findings, not on the ground of the amount of compensation awarded to the cost-claimants as shown in the cost-bill thereto attached for the services rendered by them, and which the parties had agreed to pay promptly; but on the ground that the chancellor wanted further information on the merits of the contested issues involved in the arbitration. There was no question raised as to the amount of the fee of the special master, the appellee Lamar F. Easterling, in the sum of $500, or as to the amounts assessed in favor of the other cost-claimants.

On April 13, 1953, the contractor applied for and obtained an interlocutory appeal from the action of the chancellor in overruling his motion to vacate the award, and also from his action in referring the matter back to the arbitrators for a supplemental report. The contractor then petitioned the Chief Justice of this Court to be allowed to take the interlocutory appeal with supersedeas, and that he fix the amount of the bond in that behalf. The Chief Justice fixed the supersedeas bond in the sum of $2,000. The bond was executed on April 13, 1953, with the Fidelity & Casualty Company of New York as surety thereon. The condition of the bond was in the terms required by the statute for appeals with supersedeas, Section 1163, Code of 1942, and it therefore provided, among other things, that if the said Arthur Horne "shall prosecute said appeal, with effect, and shall satisfy the decree complained of, and also such final judgment as may be made in the cause thereon and all costs, if the same be affirmed, then this

obligation to be void; otherwise to remain in full force and effect.''

■■ ■ In executing the said supersedeas bond the surety company collected from the contractor Arthur Horne the full amount of the $2,000 bond in cash as a condition precedent to becoming his surety thereon, and we assume that it also collected a premium as the consideration for becoming the surety on this bond. The fact that the surety company did require the deposit of this $2,000 in cash is stipulated in the record now before us. Manifestly the surety company was charged with notice that the several amounts listed as cost and charges due the special master, arbitrators and court reporters, had already accrued, since a cost bill was attached to the report of the board of arbitration, and the appeal with supersedeas was being taken from the order of the trial court which overruled the motion of the contractor Horne to vacate the said award. The report which the contractor had sought to have vacated disclosed the amounts due the cost-claimants and that an award had been made against the contractor by the board of arbitration therefor, and that this cost amounted to $3,524. The surety then knew that the previous bond of $1,500 on which it was the surety was insufficient to pay the cost; and it was charged with notice that the supersedeas bond would necessarily delay the payment of the sums due the cost-claimants, under the award made by the board of arbitration in that behalf, and which the principal in the bond had agreed to pay promptly. Since the contractor was suing the State Building Commission only to recover sums of money alleged to be due him, the surety on the supersedeas bond necessarily knew that in a case of this kind the only liability that a losing plaintiff can have is one for the payment of the cost of the suit. The surety here is not in position to contend, as a matter of equity and good conscience, that it collected the $2,000 from Horne as a condition precedent to executing the

$2,000 supersedeas bond merely in order that it might divert such cash deposit to the payment of its existing exposure on the $1,500 bond which it had executed for the contractor on September 17, 1951. Such is not the purpose of a supersedeas bond. When an appellant desires a bond without stay of execution he either executes a $500 bond or prepays the cost of the transcript and executes a $100 bond. In such a case neither of the said bonds are liable for more than the cost incurred in connection with the appeal to the Supreme Court, and such a bond is not a supersedeas bond. Spiro v. Shapleigh Hdw. Company, 153 Miss. 195, 119 So. 206.

The $2,000 supersedeas bond of April 13, 1953, of course stayed all further proceedings in the case in the trial court, and precluded for the time being the right of the arbitrators to resume their services preparatory to the filing of the supplemental report, and delayed the collection by all the cost-claimants of their fees and charges which were to be promptly paid ''as adjudicated by this board'' of arbitration. It also delayed the special master and the court reporters in the collection of their fees. The services of the court reporters had been rendered to the board of arbitration in connection with the five-volume record which resulted therefrom up to to that time.

It is undisputed that the surety took $1,500 of this $2,000 cash deposit and tendered it into court for the purpose of satisfying its liability on the $1,500 cost bond which it had executed as surety for the contractor on September 17, 1951. It paid out $400 of this $2,000 cash deposit in response to garnishments issued by creditors of Horne, and retained the other $100 to satisfy the appeal bond of $100 on the appeal taken from the final decree which confirmed the arbitrators award, and which bond the surety had made for Horne in connection with the final appeal, taken subsequent to the dismissal of the interlocutory appeal by this Court on June 8, 1953,

that is to say in connection with an appeal taken on July 31, 1953, the same day on which the chancellor had rendered the decree which he found later had by mistake or inadvertence limited the liability of the surety to $1,500, as stated by him in his order of March 28, 1955, correcting the said former decree.

If the surety company collected from the contractor the $2,000 cash in connection with the execution of the supersedeas bond of April 13, 1953, with the intention of using it for its protection on the $1,500 bond of September 17, 1951, and with the intention of contending that the $2,000 bond would only be liable for the small amount of cost to be incurred in connection with an interlocutory appeal to the Supreme Court, the result would be that it obtained the appeal with supersedeas on a ''phony'' bond insofar as the purpose of the appeal with supersedeas was concerned.

The judgment of this Court on June 8, 1953, dismissing the interlocutory appeal was based on the opinion of this Court reported in 217 Miss. 903, 65 So. 2d 227. There was then before the Court a motion of the State Building Commission to dismiss the appeal, and there was exhibited thereto a copy of the decree sought to be appealed, a copy of the petition for appeal addressed to the Chief Justice of the Supreme Court, a copy of the order of the Chief Justice granting the appeal, and a copy of the supersedeas appeal bond. It is so stated in the opinion of the Court rendered on that appeal. The merits of the cause were held not to be before the Court. Only the motion and the exhibits filed thereto were before the Court, as shown by the opinion. Therefore the Court could not have then adjudicated the rights of the cost-claimants in respect to the $1,500 and the $2,000 bonds since no such issue was presented on that interlocutory appeal. Moreover, neither the appellant nor any of the appellees in the instant proceeding were either real or nominal parties to the litigation at that time. The

judgment rendered pursuant to that opinion ordered and adjudged that the State Building Commission "* * * do have and recover of and from the appellant, Arthur Horne, and the Fidelity & Casualty Company of New York, surety on the appeal bond herein, all the cost of this appeal to be taxed," etc. No motion was made to correct that judgment of this Court which seems to have treated the $2,000 supersedeas bond as a mere cost bond for the payment of the cost on the appeal to this Court. That judgment of June 8, 1953, is relied upon by the appellant the Fidelity & Casualty Company of New York in the instant case as being res judicata, and liability to the cost-claimants is denied on other grounds hereinafter mentioned. The cost-claimants did not become parties litigant until after they were interpleaded by the appellant surety company after the case between the contractor and the State Building Commission was finally decided, affirmed and remanded, on its merits on December 20, 1954, as reported in 222 Miss. 520, 76 So. 2d 356. The judgment rendered pursuant to the opinion then delivered contains the same recital in adjudging the cost as was contained in the judgment dismissing the interlocutory appeal, hereinbefore quoted from, but there was no supersedeas bond involved on that appeal. The bond was for the sum of only $100, and the question of the extent of the liability of the surety, whether on both the $1,500 cost bond and the $2,000 supersedeas bond on the interlocutory appeal, was not presented to, or adjudicated by, the Court on either of those appeals. The rights of the cost-claimants were not submitted to this Court for decision; they were not in issue. The suit was not between any of the parties to the instant case. The Court on the last of the appeals of Horne v. State Building Commission said: "The decree of the lower court confirmed both the original award and the supplemental award. Since we are of the opinion that the original award was valid and broad enough to settle the dispute

between the parties, and since the supplemental award added nothing thereto, it results that no harm has resulted to appellant from confirmation of the supplemental award and it is not necessary for us to determine whether it is or is not valid.''

The appellant surety company says that the decree of the chancery court of March 28, 1955, amending its decree of July 31, 1953, cannot be upheld for three reasons: (a) that the judgment of this Court of June 8, 1953, on the interlocutory appeal was a final judgment as to the liability of the surety on the $2,000 supersedeas bond and is res judicata; (b) that the bond was only conditioned to pay or satisfy the judgment appealed from and any final judgment entered in or directed by this Court, and that there was no breach on the condition of the bond; and (c) that the decree of the trial court was not affirmed, and that therefore there was no breach of the condition of the supersedeas bond given in connection with the interlocutory appeal; and that since the order or decree appealed from was not affirmed, but the appeal was dismissed for lack of jurisdiction of the court, the bond was consequently ineffective either as a statutory appeal bond or a commonlaw obligation. Cf. Davidson, et al. v. Hunsicker, 224 Miss. 203, 80 So. 2d 834; Perkins v. Watson, et al., 92 Miss. 452, 46 So. 80.

In Tobias v. Tobias, 225 Miss. 392, 83 So. 2d 638, the Court said: ''Moreover, the essentials necessary to constitute res judicata are: '(1) identity in the thing sued for; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of quality in the persons for or against whom the claim is made.' Rawlings v. Royals, 214 Miss. 335, 58 So. 2d 820, 821; Palmer v. Clarksdale Hospital, 213 Miss. 611, 57 So. 2d 476; Brown v. Attala Drainage District No. 2, 185 Miss. 386, 187 So. 529; Jones v. George, 126 Miss. 576, 89 So. 2d 231; Creegan v. Hyman, 93 Miss. 481, 46 So. 952.''

██ ██ Since neither the appellant nor any of the appellees were parties to the former appeals, and the question here raised was not an issue, none of the other essential requisites were present to render the judgment of June 8, 1953, res judicata as between the parties to the instand proceeding. But the appellant surety company says that the cost-claimants were privies of the State Building Commission. They were no more so than they were privies of the contractor at whose instance the arbitration proceeding was instituted and the cost incurred and who had agreed to pay the cost and charges promptly, if awarded against him by the board of arbitration. An award was so made against the contractor for all of the costs, as shown by cost bill attached to their original report, the collection of which without unnecessary delay he superseded by his interlocutory appeal and supersedeas bond of April 13, 1953.

██ ██ Many cases are cited by the appellant in support of its contention that there was no judgment to appeal from on April 13, 1953. It is unnecessary that there be a judgment for the payment of money or an award of property in order to render a supersedeas bond effective. Such a bond may be given in a case awarding the custody of a child and in numerous other instances not involving the payment of money or effecting the possession of property. The fact that the bond has not stayed an execution is not controlling.

██ ██ On the second reason given as to non-liability of the appellant, the bond was conditioned according to the language of Section 1163 of the Code, supra, as hereinbefore stated, and which statute provides, among other things, that: "* * * the appellant will satisfy the judgment or decree complained of, and also such final judgment as may be made in the cause, and all costs, if the same be affirmed * * *". However, it is argued that the bond is not liable because the case was not affirmed but was dismissed for want of jurisdiction. Neverthe-

less; the dismissal of the interlocutory appeal left the order appealed from in full force and effect; and the appeal was not prosecuted "with effect" as required by the bond. A supersedeas bond is sometimes given after the statutory period for taking appeals to this Court has expired, and the appeal may for that reason be dismissed here for want of jurisdiction, but the bond is nevertheless effective. Strictly speaking, there is never an affirmance in the strict sense where an appeal is dismissed, but the dismissal of the appeal has the effect of allowing the decree appealed from to stand, as rendered, and is therefore the equivalent of affirmance so far as the liability on the appeal bond is concerned.

 In the case of Sample v. Romine, 193 Miss. 706, 10 So. 2d 346, this Court quoted with approval on motion to correct judgment the following from the case of Humphreys, et al. v. Thompson, et al., (Miss.) 130 So. 152: "The court has the inherent right to enter the judgment that it could have entered under the law, and intended to enter; and this may be done, not only at the term of court at which the judgment was entered, but at a subsequent term.", citing numerous decisions of this Court.

In the case of Haffner, et al. v. Commerce Trust Company, (Okla.) 86 P. 2d 331, 120 A. L. R. 1057, where the appeal was dismissed because it was filed after the statutory period therefor had expired. The appellant denied liability on the bond for the reason that it was a nullity and unauthorized. The Oklahoma Court held: "There is no doubt that recovery may be allowed upon a bond as a common-law undertaking even though it may be invalid as a statutory supersedeas bond." We cite this case because in the annotation thereof in 120 A. L. R. 1057, there are numerous cases listed in support of the following statement: "The sureties generally are held liable on a supersedeas or appeal bond, though it was legally insufficient to affect a stay of proceedings * * *".

According to the express holding of the chancellor in his decree of March 28, 1955, amending the decree of July 31, 1953, there was a mistake or inadvertence in the preparation and rendition of the amended decree wherein it limited the liability of the surety to $1,500. The attorney who prepared the decree overlooked the $2,000 supersedeas bond and it was not called to the attention of the court. No one was present on July 31, 1953, representing the cost-claimants. But there was on file this $2,000 supersedeas bond among the records of the proceedings and in the care of the chancery clerk. It is manifest that the chancellor intended to adjudge against the Fidelity & Casualty Company of New York the full amount of its then liability, but since the record in the case then consisted of eight volumes containing approximately 2,000 pages, it is understandable that this supersedeas bond on an interlocutory appeal taken prior to the final decision of the case on its merits by this Court could have been overlooked and not called to the attention of the chancellor. There was no reason for the attorney, who prepared the decree and testified on the hearing that he overlooked this bond, to have scrutinized the record on behalf of the cost-claiments since he was not representing them, but was, as we understand, the attorney of the surety company which made the performance bond of the contractor. He was representing neither the surety on the supersedeas bond of $2,000 nor the cost-claimants. At any rate, the proof is undisputed that the chancellor would have adjudicated the liability of the Fidelity & Casualty Company of New York to be limited to $3,500 instead of $1,500 if this $2,000 supersedeas bond had not been forgotten at the time he rendered his decree on July 31, 1953, limiting the liability of said surety to the sum of $1,500.

We are therefore of the opinion that the decree of March 28, 1955, correcting the decree of July 31, 1953, should be affirmed.

Affirmed.

*Hall, Lee* and *Arrington, JJ.,* concur. Kyle, J., took no part.

ETHRIDGE, J., dissenting.

The effect of the controlling opinion affirming the decree of the chancery court is, in my opinion, to extend considerably the liabilities of sureties on a supersedeas appeal bond beyond the terms of the statute and the legislative intent.

In brief, the issue arose in this way: Horne made a construction contract with the State Building Commission. It provided for arbitration in case of disagreement. That occurred, and a three-man board of arbitration was selected. After hearings, it made an award that there was sufficient cause for the architect to have issued his certificate that Horne had defaulted on the contract. Horne filed in the Chancery Court of the First Judicial District of Hinds County a suit against the State Building Commission, attacking the validity of the arbitration proceeding, asking for an accounting to Horne on his contract. The architects and sureties on Horne's performance bond later became parties. A master was appointed to hear evidence as to the award. The chancery court required that each of the parties should deposit with the clerk a bond of $1,500 for costs. This was done. After a hearing, the master found that the arbitration award was not sufficient and that it should be vacated. The Building Commission moved to confirm the award of the arbitrators. Horne moved to vacate the same.

On April 10, 1953, the chancery court overruled the Building Commission's motion to confirm the award and overruled the motion of Horne to vacate and set aside the award; and it vacated and set aside the master's report, and referred the matter back to the arbitrators for hearing such evidence as may be necessary to make speci-

fic findings on each item. This decree stated that the award of the arbitrators failed to embrace all of the matters submitted for arbitration.

From this interlocutory decree of April 10, 1953, Horne filed a petition for interlocutory appeal with supersedeas. This was granted, and the amount of the bond was fixed at $2,000. This supersedeas bond of April 13, 1953, recited the rendition of the decree of April 10, 1953, and then provided: ''Now, if the said Arthur Horne, d/b/a Horne Plumbing, Electric & Supply Company, shall prosecute said appeal, with effect, and shall satisfy the decree complained of, and also such final decree as may be made in the cause thereon and all costs, if the same be affirmed, then this obligation to be void; otherwise to remain in full force and effect.'' The condition of the bond was in accordance with the terms of Code of 1942, Section 1163.

On the interlocutory appeal in that case, the Building Commission filed a motion to dismiss because the appeal did not settle any controlling principles. That motion was sustained, and the appeal dismissed. Horne v. State Building Commission, 217 Miss. 903, 65 So. 2d 227 (1953). The judgment of this Court dismissing the appeal, dated June 8, 1953, provided: ''It is further ordered and adjudged that the appellee do have and recover of and from the appellant, Arthur Horne, and The Fidelity & Casualty Company of New York, Surety on the appeal bond herein, all of the costs of this appeal to be taxed,'' etc.

Upon remand the chancery court's supplemental decree directed compliance with its previous order that the arbitrators reconvene and report to the court their findings. This was done, and on July 31, 1953, the chancery court confirmed the supplemental award of the board of arbitration. This decree also and for the first time awarded and fixed the compensation for the master, the three arbitrators, and two court reporters. It award-

ed and taxed court costs against Horne and The Fidelity and Casualty Company of New York, surety also on Horne's cost bond, limiting the same to the penalty of said bond in the amount of $1500. From this decree Horne appealed a second time, but without supersedeas. On December 20, 1954, this Court affirmed the decree of July 31, 1953, which confirmed the awards made by the board of arbitration, and remanded the cause. Horne v. State Building Commission, 222 Miss. 520, 76 So. 2d 356.

On this remand, appellant Fidelity and Casualty Company of New York tendered the sum of $1500 under its cost bond as full satisfaction of the final decree against it, and interpleaded the cost-claimants. The chancery court in its decree of March 28, 1955, held that the liability of appellant was through mistake, misrecital, miscalculation and inadvertence limited to the $1500 cost bond, instead of $3500, *which includes the* $2000 *supersedeas appeal bond given on the first appeal, which was from the decree of April* 10, 1953. The trial court undertook to correct its decree of July 31, 1953, so as to render appellant liable on both its cost bond and its supersedeas appeal bond of April 13, 1953, given on the first appeal from an interlocutory decree. From that action this appeal was taken.

The chancery court, in my opinion, erred in amending its decree and adjudicating liability against appellant for the costs of the master, arbitrators, and court reporters, on appellant's supersedeas appeal bond of April 13, 1953, which was given only to obtain the interlocutory appeal from the decree of April 10, 1953. The question is determined by the provisions of the decree appealed from, of the bond itself, and of the statutes upon which it was based. The condition of the bond is in the exact terms of Code Section 1163, which provides that on interlocutory appeals appellant should give bond in a penalty double the amount of the decree or judgment

appealed from or double the amount "of the value of the property or other matter in controversy, to be determined by the officer granting the appeal, conditioned that the appellant will satisfy the judgment or decree complained of, and also such final judgment as may be made in the cause, and all costs, if the same be affirmed, . . ."

Along with Section 1163 must be read Section 1973: "In case a bond have been given for a supersedeas, the judgment of the Supreme Court, on affirming the judgment or decree of the court below, or on a dismissal of the appeal by the appellant or the court, shall be for the money adjudged or decreed against appellant, and damages and costs, or for the specific property and damages and costs, or for the damages and costs, as the case may be, against all the obligors in the bond who may be living at that time, and execution may be issued thereon accordingly; . . ."

These two statutes must be considered in pari materia. The supersedeas appeal bond of April 13, 1953, was in the exact language of the statute. It was conditioned that appellant would satisfy the *judgment or decree complained of,* which was the interlocutory decree of April 10, 1953, overruling the motions to vacate and to confirm the award and remanding the cause to the arbitrators. It was also conditioned that appellant would satisfy "such final judgment as may be made in the cause." This clearly has reference to such final judgment of the Supreme Court on appeal as may be made by that Court. The bond was an appeal bond, and the appeal was to review the decree of April 10, 1953. The final judgment of this Court dismissed the appeal, and adjudged that appellee recover from Horne and The Fidelity and Casualty Company of New York, surety, all of the costs of the appeal. No suggestion of error was filed and no motion to correct this judgment was filed within the sixty days from its entry, as required by Rule 19 of this Court.

So that judgment on the bond became final. It could not be amended by this Court, much less by the chancery court, and it fixed the surety's liability.

Section 1973 specifically provides what the judgment of the Supreme Court will be on a supersedeas appeal bond. It has to be read along with Section 1163. Under Section 1973, on dismissal of the appeal where a supersedeas appeal bond has been given, the judgment of the Supreme Court against the obligors in the bond shall be for the money adjudged against appellant and damages "and costs." By reading the two statutes together, it would appear that the surety's liability for "such final judgment as may be made in the cause and all costs" (Section 1163) refers to such further judgment and costs as are entered by the Supreme Court under Section 1973.

Necessarily the scope of a supersedeas appeal bond is limited to those matters adjudicated and dealt with in the decree from which the appeal was taken. The bond of April 13, 1953, was based upon the interlocutory decree of the chancery court of April 10, 1953. The only thing that decree did was to overrule the Commission's motion to confirm the award, to overrule Horne's motion to vacate, and to refer the matter back to the arbitrators for a hearing. This was the decree from which the interlocutory appeal was taken and for which the bond was executed. It made no adjudication whatsoever about costs of a master, arbitrators, and court reporters. Certainly the requested expenses for these parties were not approved in that order. That was not done until several months thereafter.

The judgment of the Supreme Court of June 8, 1953, dismissing the interlocutory appeal is the only judgment upon which the surety on the appeal bond of April 13 can be held liable. And that judgment, of course, did not go beyond the matter adjudicated in the decree of April 10 from which the appeal was taken, and costs

resulting from that appeal. The costs of the arbitrators, master, and court reporters had not been considered, approved, or allowed by the trial court at that time. And liability on the supersedeas appeal bond was necessarily limited to those matters (and resulting costs) dealt with and adjudicated in the decree from which that particular appeal was taken. In my opinion, this is the legislative intent manifested in Code Sections 1163 and 1973. These statutes deal specifically with obligations under a supersedeas appeal bond, describe and limit the area of liability under such a bond, and affix liability to matters arising from the items adjudicated and dealt with in the decree from which the appeal was taken.

Yet the chancery court, after an additional appeal had been taken from the decree of July 31, 1953, and affirmed and remanded in 222 Miss. 520, 76 So. 2d 356, undertakes to correct the decree involved in that second appeal of July 31, 1953, and to impose liability upon appellant for the supersedeas appeal bond given by it for the precedent, first appeal in this case from the interlocutory decree of April 10, 1953. This is attempted to be done under Code Section 1670. I do not reach the question of the interpretation of Section 1670, because this statute certainly does not have the effect of increasing the liabilities of a surety upon a supersedeas appeal bond made in accordance with Sections 1163 and 1973.

In brief, the trial court in its decree of March 28, 1955, after an intervening appeal, latches onto a supersedeas appeal bond of two years before involving an interlocutory appeal from an interlocutory decree of April 10, 1953. The decree there appealed from did not deal with the costs which the trial court has assessed against the surety. Such costs had not then been considered, approved, or allowed. The effect of the 1955 decree is to extend a surety's liability on a supersedeas appeal bond to costs arising from other matters which might later be litigated and determined in the same cause

when the case is remanded, even though the decree from which the appeal was taken did not involve such matters. It is, I think, an unwarranted extension of the liability of a surety on a supersedeas appeal bond beyond the terms of its contract and the statutes fixing liability.

It will be difficult for sureties in a case of this type to predict accurately what their future liability will be in further proceedings in the trial court. This follows from omission of a principle basic to supersedeas appeal bonds: That liability under a supersedeas appeal bond is limited to the matters adjudicated in the decree appealed from and costs and damages resulting from such matters so adjudicated. The duty and power to impose final liability is given to the Supreme Court. Code Secs. 1163, 1973. After the judgment of this Court did that, appellant's liability on its bond was finally adjudicated. The chancery court thereafter had no power to make any adjudications with reference to the supersedeas bond on appeal to the Supreme Court. So I would reverse the decree of the chancery court insofar as it determines liability on the appeal bond.

*Roberds, Holmes* and *Gillespie, JJ.*, join in this dissent.