MORRISSEY *v.* BOLOGNA, et al.

No. 41525 October 10, 1960 123 So. 2d 537

286

*Brunini, Everett, Grantham & Quin,* Vicksburg, for appellant.

*Teller, Biedenharn & Rogers,* Vicksburg; *Lott & Sanders,* Greenwood, for appellees.

LEE, J.

Miss Hazel Morrissey filed her bills in the Chancery Court of Warren County against Giuseppe Bologna and J. G. Sherard, substituted trustee, to cancel certain deeds of trust as clouds on the title of her lands as described therein. At the conclusion of the evidence, the court dismissed the bills without awarding any relief whatever. From the decree entered, Miss Morrissey appealed.

This litigation grew out of the following facts and circumstances: For many years, Mike T. Morrissey had been engaged in the illegal liquor business in this State. He operated in Vicksburg under the firm name of Delta Distributing Company.

Bologna had operated a wholesale liquor business in Baton Rouge, Louisiana, for many years. The sale of liquor in that state was lawful. He had sold whiskey to Morrissey since 1946. Deliveries were made from his place of business to Delta Distributing Company under the bills of lading, showing delivery to Vicksburg, Mississippi.

Morrissey got in arrears in his account and Bologna insisted on payment. Mrs. Elizabeth M. Morrissey, the wife of Mike, owned considerable real estate in Warren County, known as the "Southall Place" and the home in the City of Vicksburg, known as "Grey Oaks." She knew that her husband was engaged in the liquor business, but she herself had no interest therein. To secure the payment of this outstanding debt of her husband to Bologna, Mrs. Morrissey on April 29, 1953, executed

and delivered to L. A. Conaty, trustee, a note and deed of trust in the amount of $25,000, payable six months after date, covering the land known as the "Southall Place" and again on August 5, 1955, she and her husband executed and delivered to L. A. Conaty, trustee, a note and deed of trust in the amount of $75,000, payable in twenty-five equal installments of $3,000 on September 1, 1956, and annually thereafter, covering "Grey Oaks".

Bologna, on February 1, 1958, by separate instruments, substituted J. G. Sherard as trustee in the place of L. A. Conaty in these two deeds of trust; and on February 13, 1958, the substituted trustee began foreclosure proceedings to sell, on March 7, 1958, the properties described in the two deeds of trust.

Mrs. Elizabeth M. Morrissey, on February 19, 1958, filed separate bills against J. G. Sherard in which she alleged that Bologna, the beneficiary in the deeds of trust, knowingly and unlawfully sold intoxicating liquor to her husband, Mike T. Morrissey, and unlawfully exacted the deeds of trust as pretended security for such sales; that such indebtedness arose out of the illegal sale of intoxicating liquor, in violation of the laws of this State; that under Section 2612, Code of 1942, Recompiled, the debt claimed and the notes and pretended security therefor were utterly and completely void; and that Bologna and his substituted trustee were barred from collecting or attempting to collect the same. In her prayer, she sought a temporary and permanent injunction against the foreclosure and a declaration by the court that the indebtedness and the deeds of trust were void and of no effect, and that the same should be noted on the land records of the county.

Temporary injunctions were issued. Although the substituted trustee, in his answer and pleadings, suggested that Bologna, the beneficiary in the deeds of trust, and Mike T. Morrissey were necessary parties, neither was

in fact made a party. After the evidence had been heard, counsel for the defendant Sherard again expressly called to the attention of the court the fact that these two named persons were not parties to the action.

At the conclusion of the evidence, the chancellor made a finding of fact and conclusions of law to the following effect: That Mrs. Morrissey executed the notes and deeds of trust in question of her own accord and without any request or duress from the beneficiary therein; that these instruments evidenced the debts of her husband, Mike T. Morrissey, for whiskey which he purchased in Louisiana and transported to Mississippi for resale; that she knew of her husband's business and the nature of the indebtedness, which she was securing, and that she was assisting her husband in continuing his unlawful business; and that she must be deemed in pari delicto and not entitled to the aid or interposition of a court of chancery. For that reason, he left the parties where he found them, dismissed the complaints and dissolved the injunctions, but held that the substituted trustee was not entitled to the statutory damages allowable under Secion 1352, Code of 1942, Recompiled.

The defendant Sherard appealed from that portion of the decree denying to him the recovery of damages, made mandatory, as he contended, by the statute; and on that appeal, in the case entitled J. G. Sherard, substituted trustee, v. Mrs. Elizabeth M. Morrissey, No. 41,157, this Court affirmed, without an opinion, the action of the trial court in denying the recovery of damages.

Two deeds of trust, which were first liens, were outstanding in favor of the First National Bank & Trust Company of Vicksburg, dated July 30, 1952, and December 15, 1954, against "Southall Place" and "Grey Oaks", respectively. Both deeds of trust were in default and payment had been demanded. On October 7, 1958, for considerations of $3,992.01 and $388.87, and the assump-

tion of the payment of these deeds of trust, Elizabeth M. Morrissey, in the first instance, and she and her husband, Michael T. Morrissey, in the second instance, conveyed and warranted the "Southall Place" and "Grey Oaks", in each instance correctly described, to Hazel Morrissey, a sister of Michael T. Morrissey.

Thereafter, Miss Hazel Morrissey, on October 8, 1958, filed this suit, being two separate bills in which she made both J. G. Sherard, substituted trustee, in the deeds of trust, and Giuseppe Bologna, defendants. She alleged that she was the owner in fee simple of both the "Southall Place" and "Grey Oaks", describing the properties in detail. She charged that her title was derived from the U. S. Government, and by mesne conveyances, through Mrs. Elizabeth M. Morrissey. Copies of her deeds were attached as exhibits to the bills. She averred that the claim of the defendants arose by reason of the deeds of trust of the same Mrs. Elizabeth M. Morrissey, the common source of title, executed by her to them on the same property under the dates of April 29, 1953, and August 5, 1955, as heretofore mentioned. She also charged that the indebtedness for which the deeds of trust had been given as security was incurred by Mike T. Morrissey, husband of Mrs. Elizabeth M. Morrissey, for the purchase of intoxicating liquor from the defendant, Bologna, in violation of the laws of Mississippi, and that the debt and the deeds of trust were void and of no effect and were unenforceable in this State. Inasmuch as the defndants were undertaking to foreclose the deeds of trust and to claim the property, she prayed that the deeds of trust should be declared null and void, and that they should be cancelled and removed as clouds upon her title. When it subsequently appeared that the substituted trustee had consummated the sales on October 9, 1958, the court permitted an amendment of the original bills so as to pray for cancellation also of the trustee's deeds which were executed pursuant thereto.

Sherard, the substituted trustee who was served with process on October 8, 1958, in his answer, reported that he had made the sale on October 9, 1958, and asked to be discharged. The answer of the defendant, Bologna, who was served with process on October 9, 1958, after denying all of the material allegations of the bills, asserted that he had acquired title by virtue of the trustee's deeds, and set up several special pleas in which he maintained the following: (1) That in the previous proceedings, it was adjudicated that Mrs. Elizabeth M. Morrissey, in assisting her husband to continue his illegal business of selling whiskey in Mississippi, had no right in a court of equity to receive any affirmative relief; that the complainant knew and was charged with knowledge thereof; that the conveyance to her was a mere sham or pretense; that she was not a bona fide purchaser for value; and that her position was no different from that of Mrs. Elizabeth M. Morrissey. He pled the doctrine of res judicata; but said also that if it was not applicable, then he invoked the doctrine of estoppel by judgment. He further set up that Mike T. Morrissey's indebtedness was validly incurred in Louisiana, where the sale of liquor was lawful, and such contract should not be impaired.

Bologna, called as an adverse witness, admitted that he had been selling liquor to Mike T. Morrissey, operating in the City of Vicksburg as Delta Distributing Company since 1946; that his place of business was in Baton Rouge, Louisiana; that he went back and forth to Vicksburg to confer with Morrissey; that bills of lading for the shipments were made to Vicksburg and the liquor was sold to Morrissey in Mississippi; that he knew that Morrissey was selling this liquor in Mississippi; that the notes and deeds of trust involved in this litigation were given as security for Morrissey's purchases of liquor; that he knew that the sale of liquor in Mississippi was illegal; that he had been in Morrissey's place of busi-

ness about fifty times, and, on occasions, had made collections while there; and that the notes and deeds of trust were executed and delivered in Mississippi.

The learned chancellor, at the conclusion of the evidence, took the case under advisement for decision in vacation, and, thereafter, without making a finding of fact or conclusion of law, simply entered a decree dismissing the bills at the cost of the complainant. It was from this decree that Miss Morrissey appealed.

The appellee contends that the final decree, which dismissed the complaints filed by the appellant's predecessor, Mrs. Elizabeth M. Morrissey, in the chain of title, are res judicata of the present suit; that since Mrs. Elizabeth M. Morrissey was in pari delicto with her husband, Miss Hazel succeeded to no better position; and that this same doctrine operates as a bar to any relief to the appellant. He says also that the indebtedness was incurred in Louisiana, where it could be validly contracted, and the same must be governed by the laws of that state; and that the court should uphold the title vested.

The appellant contends that res judicata does not apply; that Hazel was not a party in the first suit; that the decree in the first suit was not rendered on the merits, but because of the disability of Elizabeth to sue on account of the fact that she was in pari delicto; that it did not adjudicate title in Bologna nor immunize him from a challenge of his void mortgages; and that no right of property was decided. She further says that she was not in pari delicto with him; that she had no connection with Mike T. Morrissey's business nor with the deeds of trust; that she bought no whiskey, sold no whiskey, and gave no security for any whiskey debt; that she had no dealings with Bologna; and that her purchase of the property was a bona fide transaction for a valuable consideration.

██ ■ The essentials to constitute res judicata were set forth in Palmer v. Clarksdale Hospital, 213 Miss. 611, 57 So. 2d 476, as follows: ''They are (1) identity in the thing sued for; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of quality in the persons for or against whom the claim is made.'' These essentials were reaffirmed in Rawlings v. Royals, 214 Miss. 335, 58 So. 2d 820; Tobias v. Tobias, 225 Miss. 392, 83 So. 2d 638; The Fidelity and Casualty Company of New York v. State Building Commission, 228 Miss. 37, 87 So. 2d 449; Campbell v. Campbell, 231 Miss. 658, 97 So. 2d 527.

In the original proceedings, injunctive relief was sought. In the present case, title to property is involved. In those procedings, Mrs. Elizabeth M. Morrissey, complainant, and J. G. Sherard, substituted trustee, defendant, were the sole parties. Even though the answer of the defendant suggested that the beneficiary in the deeds of trust, Bologna, was a necessary and indispensable party, he was not joined. The defendant in that case, again, before the case was decided, called this matter to the attention of the court, and also suggested that Mike T. Morrissey had been shown by the proof to be a necessary party. Yet nothing was done.

Obviously the court was without power to award a decree against Bologna, the alleged creditor and holder of the deeds of trust, when he was not even made a party to the proceedings. The court properly chose not to pass on his rights in absentia. Since the proof showed that Mrs. Elizabeth M. Morrissey, with knowledge of her husband's business, executed the notes and deeds of trust, and her act enabled him to continue his illegal operations, the court held that she was in pari delicto with her husband, and left the parties where it found them.

██ ■ The essentials for the application of the doctrine of res judicata did not exist in this case. Consequently the present cause is not affected by the original proceeding. ██ ■ This is true because ''The general

rule is that a judgment rendered because of a defect of parties does not operate to bar a subsequent action. This rule prevails whether the judgment is based upon a want of parties, a misjoinder of parties, a temporary disability of the plaintiff to sue, or a mistake of the plaintiff as to the character or capacity in which he brings suit." 30 Am. Jur., Judgments, Section 350, pp. 392-393.

Section 2612, Code of 1942, Recompiled, provides as follows: "If any person shall trust or give credit to another for intoxicating liquors, *he shall lose the debt, and be forever disabled from recovering the same or any part thereof; and all notes or securities given therefor,* under whatever pretense, *shall be void.*" (Emphasis supplied.)

■■ ■ Bologna trusted and gave credit to Mike T. Morrissey for intoxicating liquors. Under the statute, he lost his debt and is forever disabled from recovering it. The notes and deeds of trust were given for the purpose of securing the debt. Again, the statute makes these securities absolutely void.

■■■ The liquors were sent by Bologna from his place of business in Baton Rouge to Morrissey at Vicksburg with bills of lading attached. He knew at the time that such liquors would be retailed by Morrissey in Mississippi in violation of the law. In Goodman v. Swett, 108 Miss. 224, 66 So. 535, where the liquors were delivered by the appellants to a common carrier in St. Louis for delivery to the appellee's intestate in this State, and it ·was contended that Section 2612, supra, had no application for the reason that the debt sued on was contracted in the State of Missouri, the opinion said: "There is no merit in this contention, for the reason, that this section is not limited in application to debts due for intoxicating liquor sold in the State of Mississippi. It bars all persons from collecting in the courts of this state any debt so contracted." Thus the appellee's contention

that his debt is valid because it was contracted in Louisiana is untenable.

 Under the statute, Bologna had lost his debt, and his notes and deeds of trust were void. He had nothing. In law, he was not even a creditor. The defense of pari delicto is not available to aid him in acquiring property to which he has no right whatever. In pari delicto is a corollary of the equitable maxim that he, who comes into equity, must come with clean hands. There are important limitations on this rule. ''Even where the contracting parties are *in pari delicto,* the courts may interfere from motives of public policy. Whenever public policy is considered as advanced by allowing either party to sue for relief against the transaction, then relief is given to him. In pursuance of this principle, and in compliance with the demands of a high public policy, equity *may* aid a party equally guilty with his opponent, not only by canceling and ordering the surrender of an executory agreement, but even by setting aside an executed contract, conveyance, or transfer, and decreeing the recovery back of money paid or property delivered in performance of the agreement. The cases in which this limitation may apply and the affirmative relief may thus be granted include the class of contracts which are intrinsically contrary to public policy,—contracts in which the illegality itself consists in their opposition to public policy, and any other species of illegal contracts in which, from their particular circumstances, incidental and collateral motives of public policy require relief.'' Pomeroy's Equity Jurisprudence, 4th Ed., Section 941, pp. 1998-9.

In the first suit, Mrs. Elizabeth M. Morrissey was adjudged to be in pari delicto with her husband. No one is attacking that adjudication. This is not a suit between the husband and wife. It is true that Miss Hazel succeeded to the title of Elizabeth. While she may be in delicto on account of that conveyance, she is not in pari

delicto with anybody. O'Conner v. Ward, 60 Miss. 1025; McClellan v. McCauley, 158 Miss. 456, 130 So. 145; Kidd v. Kidd, 210 Miss. 465, 49 So. 2d 824.

██ ■ The public policy of this State, as expressed in Section 2612, supra, is registered most strongly against the collection of whiskey debts and the enforcement of liens attaching on that account. Another maxim of equity, namely, "Equity follows the law", is just as potent as the "clean hands" doctrine.

 ■ The following acts had already occurred when the sale was made by the trustee: (1) The bills of complaint, charging the deeds of trust to be void, had been filed. (2) Both Sherard, the trustee, and Bologna, the beneficiary, had been served with process in these suits. (3) A representative of the appellant appeared at the place of sale, and fully informed all would-be purchasers of the invalidity of the deeds of trust. In spite of the fact that Bologna had full knowledge that he had lost his debt, and that his deeds of trust were void, and that an issue in this regard had been tendered to the court, he caused his trustee to cry off the property, and he himself was the sole and only pretended purchaser.

On account of this sale, he maintains that his title is good, even though, as a matter of fact, it has been held that a check, in payment of the purchase price of intoxicating liquors, under the statute, is void in the hands of the holder, although it was taken for value and without notice of the character of the consideration. Elkin Henson Grain Company v. White, 134 Miss. 203, 98 So. 531. Under the circumstances, Bologna gained nothing from this sale.

Obviously a court of equity, bound to follow the law, should not permit a person to circumvent completely the provisions of the statute and to make a shambles of the law. Indeed Bologna could not, by this foreclosure, have title vested in himself, and thereby enforce an in-

valid debt, which, by statute, had been lost, and the security for which had become wholly void.

From which it follows that the decree of the chancery court must be reversed, and a decree will be entered in favor of the appellant, cancelling the deeds of trust and the trustee's deeds thereunder, as clouds on the title of the appellant to the lands in question.

Reversed and decree here for appellant.

*McGehee, C.J.,* and *Hall, Kyle, Holmes, Arrington* and *McElroy, JJ.,* concur.

GILLESPIE, J., Dissenting:

I respectfully dissent.

While I have serious doubts whether appellant could maintain her action under the doctrine of estoppel by judgment, or collateral estoppel, my dissent is grounded on the doctrine *in pari delicto.*

Mrs. Elizabeth Morrissey, in effect, contended in the first suit that her act in executing the deeds of trust were in furtherance of an illegal business, that of assisting her husband in the whiskey business, and that the deeds of trust and notes were void. This, indeed, is an uncontroverted fact. The chancellor, in Mrs. Elizabeth Morrissey's suit against the trustee, properly held that Mrs. Elizabeth Morrissey was *in pari delicto* with her husband, Mike Morrissey, and Bologna, and denied to her the right to use the court to extricate herself from the consequences of her own illegal act. She did not appeal. The present suit is brought by Miss Hazel Morrissey, sister of Mike Morrissey, to have the court cancel the notes and deed of trust as clouds on her title which she derived from Mrs. Elizabeth Morrissey. The appellee, Bologna, contends, and I think there was ample testimony to justify the chancellor in finding, that the conveyance from Mrs. Elizabeth Morrissey to appellant, Miss Hazel Morrissey, was nothing more than a sham

in an effort on the part of the parties to avoid the legal effect of the adverse judgment rendered against Mrs. Elizabeth Morrissey in her suit against the trustee, Sherard. That fact alone was enough to justify the lower court in denying relief to appellant, but in this dissent I am relying on the uncontroverted fact that Mrs. Elizabeth Morrissey was *in pari delicto* with the appellee Bologna and was therefore disqualified to call forth the activities of the courts to aid her in escaping the consequences of her own illegal act; and that Hazel succeeded to no greater right or purer position, and likewise is unable to invoke the aid of the courts.

As already indicated, Mrs. Elizabeth Morrissey was *in pari delicto* with appellee. The majority does not contend she was not. The record is conclusive on that question. The previous suit so adjudicated and Mrs. Elizabeth Morrissey did not appeal. The general rule is as stated in 12 Am. Jur., Contracts, Section 212, that, ''In cases where the parties are *in pari delicto* the law will leave them where it finds them.'' In 19 Am. Jur., Equity, Section 478, it is stated: ''. . . . where the wrong of one party equals that of the other, the defendant is in the stronger position. . . . It signifies that in the situation presented neither a court of equity nor a court of law will administer a remedy.'' Lord Mansfield, in Holman v. Johnson, 1 Cowper. 341, decided in 1775, gives us a better understanding of the basis of the doctrine *in pari delicto* when he said: ''. . . . the objection that a contract is immoral or illegal as between the plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: Ex dolo malo non oritur actio. No Court will lend its aid to a man who founds

his cause of action upon an immoral or an illegal act.''
The words of Lord Mansfield have been paraphrased
and approved by this Court in at least two cases: West-
ern Union Telegraph Co. vs. McLaurin, 108 Miss. 273,
66 So. 739; Downing vs. City of Jackson, 199 Miss. 464,
24 So. 2d 661.

Before discussing what I understand to be the basis of
the majority decision, it should be noted that the opinion
says that Miss Hazel Morrissey was not *in pari delicto*
with anyone. But we understand the majority to con-
cede that Miss Hazel Morrissey is in no better position
than her grantor, Mrs. Elizabeth Morrissey. Both rea-
son and authority place Mrs. Elizabeth Morrissey and
Miss Hazel Morrissey in the same position. If one who
is *in pari delicto* with another could shuck off the dis-
ability attached to his own illegal position by the simple
device of conveying or transferring his purported right
to another, then the rule denying relief to one *in pari
delicto* would be meaningless. In the present case, if
appellant, Miss Hazel Morrissey, prevails on this appeal,
then Mrs. Elizabeth Morrissey is relieved of a liability
on her warranty of approximately $100,000. In 19 Am.
Jur., Equity, Section 478, in referring to the rule deny-
ing a remedy to one who is *in pari delicto* with another,
it is said: ''The principle may be invoked not only against
a party to the illegal transaction, but also against the
heir of a party or anyone claiming under or through a
party.'' Since Miss Hazel Morrissey stands in no better
position than her grantor, Mrs. Elizabeth Morrissey, the
majority opinion should be examined as if Mrs. Eliza-
beth Morrissey was seeking to cancel the deeds of trust
as clouds on her title.

The opinion says that even where the contracting
parties are *in pari delicto,* the courts may interfere from
motives of public policy, and that whenever public policy
is advanced by allowing either party to sue for relief
against the transaction, then relief is given to him, citing

Pomeroy's Equity Jurisprudence, 4th Ed., Section 941, pp. 1998-9. The majority then says that Section 2612, Mississippi Code of 1942, announces a public policy which is strongly against the collection of whiskey debts and the enforcement of liens attaching on that account. Therefore, according to the reasoning of the majority, the court should aid Mrs. Elizabeth Morrissey, or her grantee, in affording her affirmative relief to cancel as clouds on her title deeds of trust given in a whiskey deal, and that this should be done in furtherance of the public policy of this State.

But the fallacy in the reasoning of the majority is the assumption that the purpose of Section 2612 is solely to prevent the collection of whiskey debts. The statute is merely a codification of the common law with reference to illegal contracts. This Court so stated in Goodman v. Sweat, 108 Miss. 224, 66 So. 535, wherein the Court said: "The statute was wholly unnecessary in order to prevent the collection of debts for intoxicating liquors sold in this state, for the reason that the sale of intoxicating liquors therein is illegal, and therefore the courts will not aid in the collection of debts due therefor." The statute did not add or take away from the large body of law involving the non-enforceability of illegal contracts. The public policy behind all the law denying relief to either party to an illegal contract is to deny to wrongdoers the processes of the courts. See discussion Western Union Telegraph Co. v. McLaurin, supra. The purpose is not solely to deny to the creditor his debt or to aid the debtor in escaping payment of what he honestly owes, as between the parties. Indeed, from the early cases we note that the formulators of the policy embodied in our statute recognized that as between the parties the debt should be paid; that it was not for the sake of the debtor in an illegal transaction that a remedy was denied the creditor, but considerations of the policy already stated above. We think it is to misunderstand

the statute and the historic policy that brought it into being to hold that because of it the court should give affirmative relief to a party to an illegal contract and cancel a conveyance settling a debt that was justly owing, as between the parties.

Appellant has cited no case, and I am unable to find one, holding that in a similar situation public policy demands a party to an illegal contract should be given relief in the courts. A typical case for the application of the rule cited in Pomeroy's Equity Jurisprudence, supra, is City of Philadelphia v. Rosin's Parking Lot, Inc., 358 Pa. 174, 56 A. 2d 207, where certain officials of the city made an unlawful contract with a corporation in reference to not collecting a portion of certain taxes. When the city brought suit to collect the taxes and rescind the illegal contract, the illegality of the contract was set up to prevent the city access to the courts. The court said that the case was not within the rule prohibiting recovery for breach of an illegal contract. I cannot think of any reason why the courts of this State, much less a court of equity, should suspend a general rule of law on grounds of public policy to give affirmative aid to assist Mrs. Elizabeth Morrissey, or her grantee, in escaping the consequences of her illegal contract. Of course, if Bologna could not collect his debt without resorting to the courts, then he would be denied relief. But the deeds of trust were capable of being foreclosed in *pais* without the aid of a court, and were so foreclosed.

It is true that the statute says that whiskey debts and the securities therefor are void. This is true of all illegal contracts whether so declared by statute or the common law. But they are not void in the sense that no property rights can grow out of such illegal transactions. "Such contracts are void in the sense that they are incapable of enforcement in courts of justice, and will not support a remedy. No legal obligation is incur-

red by either party. But such contracts are not void in the sense that they can confer no rights. They can be executed by the voluntary acts of the parties, or through some means or agency, other than the courts, agreed upon between the parties; and if, and when, so executed, they may confer actual and irrevocable rights upon the parties." Hall v. Edwards, 222 S.W. 167 (Tex.). See McBlair v. Gibbes, 17 How. 232, 15 L. Ed. 132; 12 Am. Jur., Contracts, Section 213, pp. 724, 725. That is what appellee had in this case, an executed contract which needed no court to enforce. I think the learned chancellor correctly dismissed the bill, and his action should, in my opinion, be affirmed.

ETHRIDGE, J., joins in this dissent.